Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 Very clearly the ship was not discharged from, the bottomry lien, unless the bond was actually paid, or unless the libellants agreed 'to pay it and look to the. freights, the general average, and the insurances exclusively for their reimbursement. Of actual payment there is no evidence whatever. On the arrival of the ship at New York, Mr. E. A. Hammond, who had a mortgage upon her, which, with interest, amounted to more tliaii $30,000, took her into his possession, in virtue of authority conferred by the mortgage, and employed the libellants to take up the bottomry bond, to collect the freight, the general average and insurance, and generally to transact the business of the vessel. Subsequently this arrangement was assented to by the owner and the charterer. Accordingly the libellants took up the bond by taking an assignment of it from the Messrs. Ward who held it, and proceeded to adjust the business of the ship, collecting the freights, general average, and insurance, and making the necessary disbursements, but as they were unable to realize from the insurances what was expected, the sums collected proved insufficient to pay the expenses of discharging the ship, the commissions, and the necessary disbursements, together with the bottomry bond. They now claim the fight to apply what they have been able to collect, first, to reimburse themselves, the commissions, necessary expenses, and disbursements made by them on account of the ship; and, secondly, to the discharge of the bottomry lien, looking to the ship for that portion of the bond which, by such marshalling of the fund, remains unpaid. And such, we think, are their rights, if they have not been surrendered. By the assignment of the bottomry bond to 'them, they became bottomry creditors, and even if there had been no such
 
 *428
 
 assignment, and had they in fact paid the bond at the instance of the owner and mortgagee, they would have been entitled in equity to the rights of the bottomry creditor. Being thus creditors by bottomry and also by payments oh behalf of the ship for expenses, they have a clear right to. apply whatever funds of the ship'come to their hajids, first, to the-.satisfaction of their.unsecured claims; and secondly, to the bond, and to look to the ^ship for any unpaid balance of the -bottomryi If, however, when they undertook their agency they agreed to pay the bond; and thus discharge its lien, looking to the freight, the general average, and the in.surauee alone for reimbursement, or to the-personal .liability of the oVtier, as the appellants insist they did, they cannot now set up a lien on -the. ship.. But we do not think the evidence-establishes any such agreement, a'nd its existence is quite improbáble. They were adjusters of averages, and .they desired tobe employed as such to attend to the business of the ship. To secure'.such-employment, they niade .the most favorable representation of what they were able and willing-to do. But they proposed to the Messrs. Ward, who held.the'bond, to take it up, taking an assignment of it, before they had any interview with Mr. Kimball, the owner. They could then have had no-accurate knowledge of the amount of the freight, the general average, and the insurance. . They could not have known that the ship’s resource's would suffice to pay 'the bottomry, and the other expenses necessary to..make the freight and the general average available. And they had then no. control over the insurances.. It ' is, therefore, quite unlikely that they undertook to pay the bond and discharge the lien. Their arrangement'was with the mortgagee,- and there is no evidence that they agreed.with him to do anything more than take the bond from the holder and act as general agents of the ship.in adjusting its affairs. The proofs do not establish that in that arrange-ment they undertook to satisfy the bottomry and extinguish its.lien without regard to the amount of,freight, general average, and insurances which could be collected, and with-' . out regard to the necessary disbursements and Commissions.
 
 *429
 
 Such is not the testimony of Mr.-Higgins, nor has the-mortgagee so testified, and the owner was hot present at the arrangement.
 

 The appellants, however, rely upon the statement of two sons of the owner, who do not speak' at all of the arrangement with the mortgagee. They speak only of a subsequent interview of Mr. Higgins with the owner, from whom-the possession had been taken, and who- had then no control over the settlement of the ship’s afiairs. Their statement is that Higgins proposed to pay the bottomry bond -for the owner if he would give his firm adjustments of claims against insurance companies, and expressed his convictions of what his firm could do, making some promises respecting the rate of commissions, and promising to apply collections to the bond immediately. The sons state further that this was verbally agreed to, but the policies were not delivered in pursuance of any such agreement, nor was there any agreement to deliver them, aud what is very remarkable, ‘the sons state that nothing was said at that interview about the policies. They were subsequently handed, to Mr. Higgins to be collected, and the amount to be applied to the payment of the bpttomry bond, if necessary. These witnesses, are contradicted in some particulars by Mr. Higgins, but. assuming that their statement is correct, it falls far short of proof that Higgins agreed to discharge the ship from the ■bottomry lien, or agreed to pay the bond and look only to the freight, insurances, and general average. And, even if the firm-could be considered as-agents of the owner, the payment of his debt, or the debt of the ship, could not work a satisfaction of the debt, or extinguish its lien. It would only change the creditor. We are of opinion, then, that no arrangement with the owner has been proved by. which the libellants have been disabled 'from enforcing the bottomry lieu.
 

 Another defence has been set up. The appellants contend that the libellants are estopped from resorting to the - ship for any balance of the bond unpaid, by. their represen
 
 *430
 
 tations. Théy- insist that -they purchased the ship relying upon a representation df-Miv Higgins, that if they purchased- and would settle’certain-claims'of the charterers,-there would, be at’ least three thousand dollars, beyond what was needed -to pay the bottomry bond, and other claim’s of his firm. There is, howevér, no sufficient proof of such representations; They are denied by Mr. Higgins, and the only person who affirms they were ■ made, is Mr., Nickerson, the purchaser himselfj And even the testimony, of Nickerson •appears to assert only that Higgins expressed an opinion respecting what would .bé the-result, rather than a positive assertion of the fact.. This is quite an insufficient basis for an estoppel, and manifestly tlie opiiiion was not relied upon. Nickerson had examined for himself some of the accounts at least.
 

 This disposes of the case. -Admitting'the libellants have no'lien in admiralty for their fees and commissions, or even for.their disbursements on account of the ship, they had, ás .we have said, a right to apply the funds they had iu hand, first to the satisfaction of the debt due them for such fees, commissions, and disbursements, applying only the.remainder to. the bond. • For the balance unpaid they have the security of the bottomry lien.
 

 Decree affirmed, with interest at the - r'ate allowed in Pennsylvania, and with costs.