# CHARLESTON.

MASON v. HARPER'S FERRY BRIDGE COMPANY.

Submitted September 4, 1886.—Decided November 6, 1886.

| | |
|---|---|
| 28 | 639 |
| 36 | 300 |
| 28 | 639 |
| 40 | 206 |
| 40 | 427 |
| 28 | 639 |
| 42 | 452 |
| 28 | 639 |
| 46 | 725 |
| 28 | 639 |
| 48 | 580 |
| 28 | 639 |
| 61 | 65 |
| 28 | 639 |
| 64 | 161 |

1. A representation in order to make it operative as an estoppel, must generally be the statement of a *fact*. When the statement or conduct is not resolvable into a statement of *fact*, as distinguished from a statement *of law*, the party making it is not bound. (p. 649.)

2. The representation, to work an estoppel, in all ordinary cases must have reference to *a present or past* state of things, not to a future matter or the expression of a mere intention or opinion. (p. 649.)

3. An injunction is obtained by a ferry-owner to restrain a bridge company from completing and operating a toll-bridge near his ferry, until the damages are ascertained and paid for the injury done to the ferry by the operation of the bridge. While the injunction is in force the parties enter into an agreement, by which the ferry-owner binds himself to dismiss or abandon his injunction, and the company in consideration thereof binds itself to pay to him a certain *per diem* from the time the bridge is completed and open for travel, until the said damages are ascertained, and until they are paid. Under this arrangement the bridge is completed and opened for travel, the suit is prosecuted and the damages are afterwards ascertained and fixed by a decree of the court, which directs that the company can either pay said damages and let the injunction be dissolved, or refuse to pay them and not use the bridge. The damages are not paid, but under the aforesaid agreement the bridge is kept open and the *per diem* paid until after a written notice is given by the ferry-owner to the company, informing it of the said decree, and stating that it must elect either to pay said damages or close the bridge. Some time thereafter the company closes the bridge and refuses longer to pay the *per diem*. The ferry-owner then brings an action of debt on said agreement for the *per diem*, while the bridge was so closed. The defendant enters a plea of set-off, averring that induced by said notice, it closed its bridge and thereby suffered damages to the full amount claimed by the plaintiff. HELD :

I. The said plea shows no ground to entitle the defendant to damages or set-off against the plaintiff's claim ;

II. The plea sets up no facts which could operate as an estoppel upon a plaintiff;

III. The plaintiff shows a good cause of action and is entitled to recover.

4. In an action, where the only issue is upon a plea in confession and avoidance, upon which a verdict has been found for the defendant, and it is afterwards decided that such plea is bad in substance, judgment should be entered for the plaintiff *non obstante veredicto.*   (p. 652.)

*McDonald & Beckwith, T. C. Green, Jr.,* and *J. M. Mason* for plaintiff in error.

*D. B. Lucas* for defendant in error.

SNYDER, JUDGE:

In March, 1878, James M. Mason was by an order of the county court of Jefferson authorized to establish a ferry across the Shenandoah river at Harper's Ferry, which was soon after done and the ferry put in operation.   In February, 1879, the Harper's Ferry Bridge Company was incorporated for the purpose of constructing a toll-bridge across the same river within less than half a mile of said ferry.   The Bridge Company in June 1879 began the construction of its bridge, and in July 1879, Mason obtained from said county court an injunction restraining the Bridge Company from constructing its bridge until by the exercise of the power of eminent domain it had acquired the right to damage his ferry-franchise.   The cause was removed to the circuit court of said county where by an order of the judge made September 2, 1879, in vacation the said injunction was in effect dissolved.   On October 18, 1879, Mason obtained an appeal *with supersedeas* to said order.   But before this appeal was perfected and the *supersedeas* served upon the defendant, the circuit court by its decree of November 21, 1879, dismissed the plaintiff's bill, and from this decree also the plaintiff, Mason, obtained an appeal and *supersedeas* from this Court.   Both appeals were then perfected, and after the *supersedeas* had been served on the defendant, it again proceeded with the construction and erection of its bridge.   Thereupon on the motion of Mason a rule was awarded by this Court against the defendant to show cause, why it should not be fined for disregarding said *supersedeas,* and by its order of December 26, 1879, this Court imposed a fine on the defendant for disobedience to said

*supersedeas.    State* v. *Harper's Ferry Bridge Company*, 16 W. Va. 865.

In this condition of affairs Mason and the Bridge Company on January 28, 1880, entered into the following agreement of that date which was signed and sealed by them:

" An article of agreement this day made and concluded between the Harper's Ferry Bridge Company, through George W. Green, its president, of the one part, and James M. Mason, of the second part, witnesseth :

"Whereas, It is desirable that the Harper's Ferry Bridge Company shall be allowed to proceed with the completion of its bridge across the mouth of the Shenandoah river without further interruption,molestation, or disturbance; and whereas it has been arrested in its operations by a *supersedeas* obtained from the Supreme Court of Appeals of this State by the party of the second part to an interlocutory order or decree rendered by the Hon. John Blair Hoge in vacation on the 2d of September, 1879, dissolving an injunction theretofore awarded in favor of said Mason.   Now for the purpose of enabling said Bridge Company to proceed without further loss of time in the completion of its said bridge, and each party reserving every right and remedy, to which they are entitled in law and equity, except so far as the same may be in express terms hereby waived, suspended, postponed or surrendered, do agree upon the following terms of temporary arrangement:

"*First:* The Harper's Ferry Bridge Company covenants and agrees to pay to the said J. M. Mason in weekly payments the sum of one dollar and twenty-five cents per day from and after the time that the said bridge shall be completed and open for transportation, whether as a free or as a toll-bridge ; and which payments are to be continued until it is determined by the verdict of a jury under the instructions of the court, what damages, if any, the said Mason will be entitled to for injury to his ferry-franchise, resulting from the construction of the bridge, and until said damages are paid.

"*Second :* The said Mason covenants and agrees upon his part, in consideration of said weekly payments as aforesaid, that there shall be no delays in the assertion and prosecution of his claim for damages; that he will co-operate earnestly with counsel of the Bridge Company in the use of all due dil-

igence in expediting the trial of the issue between the Bridge Company and himself, and to this end, that he will on the commencement of the weekly payments of the Bridge Company to him, sue out the proper legal proceedings to test the question of his right to damage for injury to his ferry growing out of the construction of said bridge.

"*Third :* The said Mason covenants and agrees, that he will immediately after the execution of this agreement dismiss or abandon the *supersedeas* obtained by him to the interlocutory order rendered by Judge Hoge on the 2d day of September, 1879, or adopt such other measures that may be expedient and necessary to dissolve or put an end to the injunction now construed by the Court of Appeals to be in force by virtue of said *supersedeas.* It being the clear and definite purpose and obligation of the said Mason to allow without further difficulty the completion of said bridge, and he assumes to take upon himself the duty of relieving the Bridge Company from all orders restraining the further prosecution of the work. Except as above distinctly set forth and expressed, the parties reserve all their rights and remedies as now existing in law and equity, nor shall anything contained in this agreement be construed into the admission of any right in either party beyond what is specifically set forth in the above agreement. *Provided,* Mason should have security for the $1.25 a day, as herein payable, before the order is given suspending the *supersedeas* as above."

Upon the execution and delivery of said agreement Mason abandoned his *supersedeas* and earnestly co-operated with the counsel for the Bridge Company in prosecuting his claim for damages, and by the use of all due diligence expedited the trial of the issue for the ascertainment of said damages, and there was in fact no unnecessary delay in the assertion and prosecution of said claim. And the Bridge Company at once entered upon the construction of its bridge and completed and opened the same for transportation and travel and kept the same open as a toll-bridge, and the company paid to Mason the *per diem* of $1.25, as provided in the agreement, from the time of the completion of the bridge to the time it was closed in July, 1883.

On the hearing of the appeal before mentioned, this Court

by its decree of December 18, 1880, remanded the cause to the circuit court with directions te that court to award an action *quantum damnificatus* to assess the damage done to Mason's ferry-franchise by the construction and operation of the defendant's toll-bridge, in which issue Mason should be plaintiff and the Bridge Company defendant, and when the jury should by their verdict ascertain said damage, the said court should decree the same to be paid to the plaintiff; and until the damage should be so ascertained and paid, the injunction should continue in force, and when so paid, it shall be wholly dissolved. *Mason* v. *Harper's Ferry Bridge Company*, 17 W. Va. 396.

After receiving the mandate of this Court, the circuit court in pursuance thereof caused said issue to be tried by a jury, and the jury, on June 18, 1881, found a verdict fixing the damages of the plaintiff at $10,000.00; and on the same day the court made a decree in the chancery cause, that " the defendant, the said Bridge Company, do pay to the complainant, Mason, the sum of ten thousand dollars, the amount of said assessment by said jury, with interest thereon from the date of this decree until paid, and leave is given to the complainant to sue out execution upon this decree." From this decree the Bridge Company obtained an appeal and *supersedeas* to this Court. On the final hearing here this Court by its decree of August 25, 1882, reversed the decree of the circuit court, on the ground that the same had erroneously made the payment of said $10,000.00 absolute and unconditional, this Court holding and deciding that, "If the Bridge Company choose, it can entirely abandon the bridge, and in that case it will not be required to pay the damages. Mason was not permitted to compel it to pay the amount ascertained by the verdict. He enjoined it from *damaging* his ferry-franchise by the construction and operation of the bridge, until compensation was made; but after it is ascertained by the verdict of a jury what it shall pay before it can use the bridge, one of two courses is open to it: to pay the money and let the injunction be dissolved, or to refuse to pay it and not use the bridge or permit it to be used by the public."

In accordance with this opinion this Court in lieu of said

decree of the circuit court entered a decree, by which it ordered, "that when the appellant, the Harper's Ferry Bridge Company, pays to the appellee, Mason, the sum of $10,000.00, the amount ascertained by the jury as damages to said ferry-franchise by the construction and operation of the bridge of appellant, the said injunction shall be wholly dissolved; but until the said sum is so paid to the said Mason, the injunction is continued in full force and effect."    *Mason* v. *Bridge Co.*, 20 W. Va. 223, 243.

By deed, dated November 13, 1882, Mason conveyed to W. F. Lippitt and others, called in the record the "Syndicate," said ferry, including his ferry-franchise and landings, his claim against the Bridge Company for said $10,000.00 damages, and all his rights to collect and recover from the Bridge Company the *per diem* of $1.25 under the aforesaid agreement of January 8, 1880.    Some time after and before the commencement of this action, said "Syndicate" re-conveyed all of said property, damages and rights to Mason and re-invested him with all the rights, title and interest, he had therein before his conveyance to the "Syndicate," but during the period the title thereto was vested in the "Syndicate," and before said re-conveyance, to wit : on November 28, 1882, the said Lippitt and his associates prepared, signed and caused to be circulated in the town of Harper's Ferry and served on the stockholders of the said Bridge Company the following written notice:

"*To the Stockholders in the Harper's Ferry Bridge Company :*

"You are hereby informed that we have purchased from J. M. Mason his ferry, his claim for the damages thereto, and his rights under the bond, whereby your company and its sureties contracted to pay him ' in weekly payments $1.25 per day from and after the time that the bridge shall be completed and open for transportation, whether as a free or a toll-bridge, and which payments are to be continued until it is determined by a verdict of a jury under instructions of the court, what damages, if any, the said Mason will be entitled to for the injury to his ferry-franchise resulting from the construction of said bridge and until said damages are paid. The court decided that you must elect either to pay the dam-

ages assessed by the jury, or close the bridge, and this is to no-
tify you, that you must make this election, as soon as we have
a large boat to accommodate the travel.    We expect to have
our ferry fully equipped in the course of the next few days.
We express the hope that you will not elect to close your
bridge, because your doing so will be a severe blow to the
town of Harper's Ferry, in whose prosperity we all have a
common interest."

This notice was served on the stockholders of the Bridge
Company soon after its date, November 28, 1882, and on July
31, 1883, the company by order of its board of directors
closed the bridge, and, so far as the record now before us
shows, it has remained closed ever since.

In September, 1885, Mason filed his declaration in debt
against the said Bridge Company in the circuit court of Jef-
ferson county, claiming that by virtue of the aforesaid writ-
ten agreement of January 28, 1880, between him and said
company the latter was indebted to him $385.00, being the
*per diem* of $1.25 due him, for the period between October
17, 1884, and August 22, 1885, from the company under said
agreement, and that it had failed and refused to pay the same.

To this declaration the defendant, on December 14, 1885,
entered the plea of *nil debet*, and issue was thereon joined.
At a subsequent term of the court the defendant filed a
special plea, No. 1, tendering an issue of law, which was found
by the court against the defendant.    This plea is not in the
transcript before us, and no question is raised in this Court in
regard to it or the action of the court upon it.    The defend-
ant then tendered its special plea, No. 2, to which the plain-
tiff objected, and the objection being overruled, the said plea
was filed.    The plaintiff then demurred to said plea, which
demurrer the court overruled.    The defendant then with-
drew its plea of *nil debet*, and the plaintiff replied generally
to plea, No. 2, and issue was thereon joined.    The case was
tried by a jury, who returned a verdict for the defendant;
and on June 2, 1886, the court entered judgment upon the
verdict for the defendant.    The plaintiff has brought the case
to this Court by writ of error.

During the trial the plaintiff took several bills of excep-
tions, which are made parts of the record; but in the view

this Court takes of the case, it is unnecessary to state any of them.    There was but a single issue before the jury, and that, as we have seen, was upon the defendant's plea, No. 2.    This plea refers to and states at much length the orders, decrees and proceedings had in the circuit court and this Court in the injunction suit of *Mason* v. *Harper's Ferry Bridge Company*, which I have hereinbefore stated; it also refers to the agreement of January 28, 1880, on which this action is founded, the conveyance of November 13, 1882, by Mason to the "Syndicate," and sets out in full the written notice of November 28, 1882, served on the stockholders of the Bridge Company by the "Syndicate," hereinbefore set forth; and the plea then avers and concludes as follows; "And the defendant says, that subsequently" (after receiving the written notice aforesaid), "to wit: on July 31, 1883, *the defendant induced by reason of the said notice* and in pursuance thereof closed its bridge for travel and kept the same closed during the whole time covered by the plaintiff's claim as set out in his declaration, and that the defendant in closing said bridge by reason of said notice thereby suffered great damage and injury, to wit: To the full amount claimed by the plaintiff in his said declaration; and this the defendant is ready to verify; whereof it prays judgment," &c.

This plea is sworn to by Geo. W. Green, president of the Bridge Company.

The inquiry before us is: Would the facts averred in this plea, if proved, in law entitle the defendant to a verdict and judgment in its favor?    The jury has found that the facts averred are true, and therefore the only question for this Court to determine is, whether said facts constitute in law a defence to the action.    This question in the first place requires us to ascertain the respective rights and duties of the parties under their agreement of January 28, 1880, that is, whether or not Mason, at the time he brought this action, was in a position, which entitled him to sue for the *per diem* provided for in said agreement.    If he was not, his declaration is bad, and the demurrer to the plea according to the settled rule in such cases goes back to the first fault in pleading, and we must affirm the judgment of the trial-court.

By the agreement Mason bound himself that there should be no delay in the assertion and prosecution of his claim for damages, that he would co-operate earnestly with the defendant in the use of all diligence in expediting the trial of the issue to ascertain said damages, and that to this end he would sue out the proper legal proceedings to test the question of his right to damages; that he would immediately dismiss or abandon the *supersedeas* obtained by him to the decree of September 2, 1879, or adopt such other measures, as might be necessary to dissolve or put an end to the injunction then in force; and finally Mason agreed, that it was his clear and definite purpose to allow without further difficulty the completion of said bridge, and he took upon himself the duty of relieving the Bridge Company from all orders restraining the further prosecution of the work. These were all the obligations or duties either expressly or impliedly imposed upon Mason by the agreement. The declaration avers that all these obligations and duties had been faithfully complied with and performed by him. And there is in the facts certified or the proceedings in the suit referred to in the agreement nothing to question such performance.

We come now to inquire, whether or not by the terms and purpose of the agreement the defendant is so in default as to entitle the plaintiff to maintain this action. By the first clause of the agreement the defendant bound itself to pay to Mason the sum of $1.25 per day from the time said bridge should be completed and open for travel, and that these payments should continue until it should be determined what damages, if any, Mason was entitled to for injury to his ferry-franchise, *"and until said damages are paid."* This embraces all the obligations and duties either expressly or impliedly imposed upon the defendant by said agreement. It is not denied, that the bridge has been completed and opened for travel, and that it continued open for two or three years. Nor is it questioned, that the damages, to which Mason is entitled for injury to his ferry-franchise, were finally and conclusively ascertained in August, 1882; neither is it denied that said damages are still unpaid, and that the *per diem* claimed in the plaintiff's declaration is also unpaid. The only controversy possible under this state of facts is, whether or not

upon the ascertainment of the damages, to which Mason was entitled for the injury to his ferry, his right to demand the *per diem* from the defendant ceased. The agreement does state that it is a "temporary arrangement," and that the payment of the *per diem* is to be continued until the damages are ascertained; but then this is followed by the express stipulation, that such payment is to be continued, "until said damages are paid." I do not think there is or can be any doubt or question, that according to the express terms and intent of said agreement, the Bridge Company is bound to continue the payment of the *per diem* until the damages are paid, whether the bridge is open or has been closed by the voluntary act of the company and without a legal cause. I therefore conclude that the declaration sets forth a sufficient cause of action.

Our next inquiry is: Does the defendant's plea show a legal defence to the action? It may be here stated that the plea of set-off under the statute is in the nature of a cross-action. It admits the right of the plaintiff to recover on the facts alleged in his declaration, and seeks to avoid such recovery not by controverting or avoiding said facts, but by asserting a counter-claim, on which the defendant is entitled to recover from the plaintiff damages equal to the claim asserted by him against it. The purpose of the plea seems to be to show, that the defendant is entitled to recover these damages from the plaintiff by reason of some breach of his agreement. But no breach of any contract or agreement is alleged. It is simply alleged, that by reason of said notice the defendant was induced to close its bridge and thereby sustained damages. It is not even alleged, that the giving of said notice was a breach of the agreement, or of any duty imposed by it upon the plaintiff. But if it had so alleged, it would still have failed to allege any breach of the agreement; because the agreement nowhere forbids the giving of such a notice. If the plea had alleged, that the plaintiff had sued out his injunction and by its enforcement closed the bridge, it would have presented an interesting question. But as it does not so aver, it is not necessary to consider that question. The plea is therefore clearly bad as a plea of set-off under the statute, because it wholly fails to aver any breach of contract or wrong, which

would entitle the defendant to damages.  Sec. 5, ch. 126 Code.

From the argument of the counsel for the defendant in error, I infer that he regards this as a plea in the nature of an estoppel.   It is certainly not in form such a plea.   Ordinarily it is sufficient that each pleading should contain a *prima facie* case or defence.   But where the pleading is of a character not regarded favorably by the courts this rule does not obtain.   Pleas in estoppel are of this character, because their object is to exclude the truth.   4 Min. Inst (1000) 1105 ; Big. on Estop. 543.

But as it is not necessary to plead an estoppel *in pais*, for the purposes of this case, we will disregard all formality and even defects in the plea ; and then see, if we can find anything either in the plea or the facts therein stated or referred to, which could under any circumstances operate as an estoppel upon the plaintiff here.

After a review and careful analysis of the English and American cases, Mr. Bigelow, in his able book on Estoppel, p. 437, deduces the rule, "that all of the following elements must be present in order to an estoppel by conduct :

1. There must have been a representation or concealment of *material* facts :

2. The representation must have been made with *knowledge* of the facts ;

3. The party to whom it was made must have been *ignorant of the truth* of the matter ;

4. It must have been with the *intention* that the other party should act upon it ;

5. The other party must have been *induced to act upon it.*"

In explanation of these essential and indispensable elements of an estoppel, the same author states, that the representation must generally be a statement of facts, and that it can rarely happen that the statement of a *legal proposition* will conclude the party making it from denying its correctness, except when it is understood to mean nothing but a simple statement of fact.   The rule in this regard is, that when the statement or conduct is not resolvable into a statement of fact, as distinguished from a statement of law, the party making it is not bound. The representation must, in all ordinary cases, have reference to *a present or past* state of things ; for

if it be concerning something in the *future*, it must generally be either a mere statement of an *intention or opinion*. The intent of a party, however positive and fixed, is necessarily uncertain as to its fulfillment, and must depend on contingencies, and be subject to change and modification by subsequent events and circumstances. A person can not be bound by any rule of morality or good faith not to change his intention. *Howard* v. *Hudson*, 2 El. & B. 1; *Plumer* v. *Lord*, 9 Allen 455.

Certainty is essential to all estoppels. The representation must, therefore, be plain, and not be a mere matter of *inference or opinion*. *Belle of Sea*, 20 Wall. 421; *Johnson* v. *Owen*, 33 Ia. 512; *Lawrence University* v. *Smith*, 32 Wis. 587.

The representation must be false or untrue; that is, it must be a misrepresentation and different from that sought to be established on the trial; for, if it is true, there can be no fault or ground for an estoppel. The very essence of the doctrine is, that the party shall not be allowed to prove a state of things different or in conflict with his previous representations or conduct.

Looking at the case before us in the light of these settled rules and authorities, it seems to me plain, that neither the averments of the plea, nor the documentary evidence therein referred to, constitute the basis of an estoppel. As before stated, the plea does not aver, that the plaintiff had caused the bridge to be closed by suing out or enforcing his injunction. Nor do the facts show that he even attempted to do so. The most that can be claimed, and all that the plea avers is, that he gave the defendant notice requiring it to make an election in a certain event and at an uncertain future time. For present purposes, we treat the notice given by the " Syndicate " as the notice of Mason, and the notice to the stockholders as a notice to the company. It is insisted by the defendant in error, that the decree of this Court entered August 25, 1882, 20 W. Va. 243, gave the defendant the option, either to pay the $10,000.00 damages, and let the injunction be dissolved; or to refuse to pay the damages, and close the bridge; and that Mason by giving the notice in question, accepted the latter alternative and the defendant acquiesced. But the option according to the decree was not

given to Mason but to the defendant. What right had Mason to act upon an option given to the defendant? How could his election bind the defendant? I can not see how an option addressed to the defendant could be either accepted or rejected by Mason who had no rights or choice in the matter. The option was wholly for the benefit of the defendant, and it elected to close the bridge as it had the undoubted right to do. The fact that it closed the bridge at the suggestion or even upon the threat of Mason does not make it any less the election and voluntary act of the defendant.

But the notice, so far as it contained any representation, was merely the statement of an opinion upon a proposition of law, and that too in regard to a particular written legal opinion or decision which was stated and equally open to the inspection and construction of both parties. Even, if the plea had averred that the defendant acted on this mere statement of a legal proposition, it would not, under the authorities before stated, be good as an estoppel. There is no averment that the defendant acted on the notice. The plea simply states, that "the defendant induced by reason of said notice, and in pursuance thereof closed its bridge for travel,' &c. Why was the defendant any more induced to close the bridge than it was to pay the damages. Even the notice, as the defendant construes it, gave the company this election and expressed the hope, that it would not close the bridge. There was, it seems to me, very little foundation in this notice for an inducement to close the bridge. The reasonable presumption from all the facts is, that the defendant was induced to close the bridge rather than pay the damages, because it preferred the one to the other, and that the notice was used as a pretext rather than operated as an inducement.

But the facts stated in the notice were true. The court had decided just what it stated. It could not, therefore, for that reason constitute an estoppel. Even if it could be construed as a notice or threat that Mason was about to enforce his injunction for the purpose of closing the bridge, and that the enforcement of the injunction would have been a violation of his agreement, it could not effect an estoppel, because that could only be regarded as a notice, that he intended in a certain contingency to sue out the injunction at

a future time. The notice says nothing about the injunction. It does not demand an immediate election. It says: "You must make this election as soon as we have a large boat to accommodate the travel." The plea does not aver, nor do the facts in the case prove, that Mason ever had the expected large boat, or that the contingency on which the election was to be made ever happened. The most that I can make out of this plea is, that the defendant, being desirous of closing the bridge and at the same time avoiding the payment of the *per diem*, was induced to believe that this notice would furnish it a plausible, if not an available, pretext to do so and being thus induced it closed the bridge and took the risk of escaping the payment of the *per diem*. The closing of the bridge under these circumstances, as we have seen, was in effect the same as if the defendant had done so voluntarily and without any pretext or excuse. We have before shown that the closing of the bridge in such manner did not relieve the defendant from its obligation to pay the *per diem*. In any view therefore it seems to me that this plea, whether regarded as a set-off or as an estoppel, is bad and immaterial, and that the circuit court erred in overruling the demurrer thereto.

The next question presented is, what order or judgment should this Court make or render under the circumstances appearing in this case. The defendant having withdrawn its plea of *nil debet*, the only plea is this special plea, No. 2, which we have held bad and immaterial. It is probable that the plaintiff is entitled to judgment on his demurrer. Steph. Pl. 162. But according to the practice in Virginia, I think it perhaps safer to give judgment for the plaintiff *non obstante veredicto*. In this case the plea was by confession and avoidance. The rule in such cases is, where such plea is bad in substance and ought to have been adjudged bad on demurrer, for the Court to give judgment for the plaintiff without regard to the verdict. If the plea is itself substantially bad in law; the verdict, which merely shows it to be true, can not of course avail to entitle the defendant to judgment; while on the other hand the plea, being in confession and avoidance, involves a confession of the plaintiff's declaration, and shows that he is entitled to maintain his action. In such

case, therefore, the Court will give judgment for the plaintiff without regard to the verdict, and this is also called a judgment *as upon confession*.  4 Min. Inst. (771), 845 ; Steph. Pl. 118: *Brown* v. *Shields*, 6 Leigh 440 ; *Ross* v. *Milne*, 12 Leigh 227 : *Boyle* v. *Overby*, 11 Gratt. 202, 206.

I am therefore of opinion that the judgment of the circuit court rendered June 2, 1886, should be reversed; and this Court proceeding to give such judgment as that court should have given, it is ordered that judgment be entered in favor of the plaintiff for the debt in his declaration mentioned *non obstante reredicto*.

REVERSED.     JUDGMENT FOR PLAINTIFF.