## WARREN-SCHARF ASPHALT PAVING CO. v. LACLEDE CONST. CO.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1901.)

### No. 1,542.

CONTRACTS—CONSTRUCTION AND VALIDITY—STIPULATION FOR RIGHT TO SUSPEND WORK IN BUILDING RAILROAD.

Plaintiff contracted with defendant to furnish the materials and construct a line of railroad. The contract contained a clause giving defendant the right at any time, and for any reason satisfactory to it, to suspend the prosecution of the work, "either temporarily or permanently," on giving 10 days' notice, and further providing that such suspension should not give plaintiff "any claim for damages therefor" against defendant. After the work had been partly done, defendant gave notice, and suspended the same permanently. *Held*, that such provision was one which it was competent for the parties to make, and was valid and governed their rights, and that under it plaintiff was entitled to recover only the amount earned under the contract to the date of suspension, without damages for loss of profits.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

William Pierrepont Williams (James L. Blair and James A. Seddon, on the brief), for plaintiff in error.

James F. Meagher (Silas H. Strawn and Frederick S. Winston, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge. The Warren-Scharf Asphalt Paving Company, the plaintiff in error, sued the Laclede Construction Company, the defendant in error, upon a contract dated March 14, 1899, whereby the former company agreed with the latter company to furnish the materials and perform the necessary work and labor in the construction of a railroad from Peoria, Ill., to East Clinton, in the state of Illinois. In one count of the petition it was alleged that the defendant company was indebted to the plaintiff company in the sum of $11,159.12 for work actually done and performed in the execution of said contract, for which sum the plaintiff prayed judgment. In another count of the petition it was alleged, in substance, that after work to the value of $11,159.12 had been performed, and on or about May 27, 1899, the defendant company, without any default on the plaintiff's part, abrogated the contract and refused to allow the plaintiff to proceed further in the performance of the same; that, if the plaintiff had been allowed to perform its said agreement, it would have realized a profit in the sum of $130,000, for which latter amount it prayed judgment in addition to a judgment for the value of the work actually performed at the time the contract was abrogated. The defendant company pleaded, in substance, that the contract in question contained the following provision, known as "Paragraph 12":

"The party of the second part (namely, the Laclede Construction Company) shall have the right at any time, and for any reason which may appear satis-

factory to said party, to suspend the prosecution of the work embraced in this contract, either temporarily or permanently, upon giving ten days' notice to the party of the first part (namely, the Warren-Scharf Asphalt Paving Company) of his intention so to do, in which event said party of the first part shall be entitled to payment in full for the work done by it up to the time of such suspension, subject to such deductions as are herein elsewhere provided for; but such suspension shall not give to the party of the first part any claim for damages therefor against said party of the second part."

The defendant company further pleaded that on May 27, 1899, by virtue of the aforesaid provision of the contract, it notified the plaintiff to permanently suspend the prosecution of the work embraced in the contract upon the expiration of 10 days from said date, and that the plaintiff then and there agreed that it would suspend the prosecution of the work, and agreed to waive the 10 days' notice required by the provisions of the contract.

On the trial of the case the defendant company admitted an indebtedness to the amount of $11,159.12 on account of work actually done at the time the contract was abrogated, and made a tender of that amount, whereupon a judgment was entered therefor on the second count. Upon an inspection of the contract the trial court ruled that the provision of the contract above quoted empowered the defendant company to abrogate the contract on 10 days' notice without liability for damages, and, in accordance with that view of the case, directed a judgment to be entered in favor of the defendant company on the first count of the petition, wherein the plaintiff sought to recover unearned profits. The case was brought to this court upon a writ of error by the plaintiff company. The sole question, therefore, which the record presents, is whether the trial court properly construed the twelfth paragraph of the agreement. We are of opinion that the clause of the contract in question was properly interpreted and enforced by the trial court. Indeed, the meaning of the clause is too plain to admit of any controversy. The parties to the agreement had in mind both a temporary and a permanent suspension of the work, and, in language which cannot be misunderstood, stipulated that the defendant company might suspend operations under the contract, either temporarily or permanently (that is, abrogate the contract altogether), on 10 days' notice. And as if to make their purpose and intent more clear, and to put the matter beyond dispute, they further agreed that, if operations under the contract were suspended, the party of the first part should not have any claim for damages. In other words, the right was reserved by the defendant company to put an end to the agreement at any time on 10 days' notice, without liability for damages. It was entirely competent for the parties to enter into such an agreement, and such stipulations are sometimes found in contracts for the construction of railroads, and for the doing of other work of a like character, where unforeseen events may occur to render a temporary or permanent suspension of the work both desirable and necessary. We perceive no reason whatever for indulging in the assumption that, when the parties agreed that the work might be suspended permanently at the election of the defendant company, they did not mean what they said, but used the word "permanently" in some new and strange sense. Nor do we perceive that

there is any force in another suggestion of counsel,—that because 15 per cent. of the value of the entire work was to be retained by the defendant company until the whole work was completed, and that because the clause above quoted provides that, if the contract is suspended, payment in full for the work done up to the time of such suspension shall be made, "subject to such deductions as are herein elsewhere provided for," and that because the amount of work actually done did not amount to 15 per cent. of the whole work contracted for, therefore the plaintiff cannot recover anything in this action if the construction of the clause aforesaid which was adopted by the lower court prevails. Among the general stipulations found in the agreement was one to the effect that the defendant company, to protect itself against liens, might make payment for labor and supplies directly to any subcontractor, "and deduct the amounts so paid" to a subcontractor from any amount found to be due to the plaintiff company. The deductions referred to in clause 12 evidently have reference to such payments as may have been made to any sub-contractor for the purpose of protecting the defendant against liens at the time the work should be suspended. It has no reference whatever to the 15 per cent. of the total value of the work which was to be retained by the defendant company until the work was fully completed. Under the provisions of the contract, if it was abrogated on 10 days' notice it became the duty of the defendant company to pay the full value of all the work done up to that time, deducting therefrom only such sums as might have been paid directly to subcontractors to protect the work against liens.

Finding no error in the record, the judgment below is accordingly affirmed.