**FORD MOTORCAR CO. v. RACKLEY.**

No. 7449—Opinion Filed May 15, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 427.)

**1. Sales—Action for Breach—Petition—Demurrer.**

Where a contract provides that the second party shall have the right and privilege of re-

turning to first party at the place of purchase at any time during the term of the contract or within 30 days after its cancellation or expiration at his own expense for credit at the purchase price all such new parts of first party's automobiles as he may desire, except bodies, etc., provided same are in the same condition as when sold by the first party to second party, a petition seeking to recover the value of such parts of the automobile as second party had on hand should allege a compliance with the contract by returning the same to first party during the life of the contract or within 30 days after its cancellation, and in the absence of such an allegation fails to state a cause of action, and a demurrer thereto should have been sustained.

**2. Same—Cancellation of Contract—Effect.**

Where such contract provides that the same shall continue in force and govern all transactions between the parties from its date until September 30, 1914, but that either party shall be at liberty, with or without cause, to cancel and annul the contract at any time upon written notice by registered mail to the other party, and such cancellation shall also operate as a cancellation of all orders for automobiles, etc., which may have been received by first party from the second party prior to the date when such cancellation shall take effect, such provision of such contract gives to either party the right to cancel same at any time before its expiration, with or without cause, by giving the written notice provided therein, and **no** cause of action for damages accruing subsequent to such cancellation can be based thereon against the party canceling in the manner provided therein.

**3. Same—Sufficiency of Petition.**

The amended petition filed in this action alleges the cancellation of the contract by written notice by registered mail, and seeks to recover damages for profits upon automobiles that the second party would have sold between the date of the cancellation of the contract and its expiration. Held, that a demurrer thereto should have been sustained, as the contract, free from fraud or mistake, provided in itself how it might be canceled without liability accruing to either party thereto.

(Syllabus by Hooker, C.)

Error from County Court, McClain County; A. J. Mauldin, Judge.

Action by B. H. Rackley against the Ford Motorcar Company. Judgment for plaintiff, and defendant brings error. Judgment reversed, and cause remanded, with directions to sustain the demurrer to the amended petition.

Douglas B. Crane, L. B. Robertson, and Vaught & Brewer, for plaintiff in error.

L. T. Cook, for defendant in error.

Opinion by HOOKER, C. The parties hereto in February, 1914, entered into a written contract by the terms of which the Ford Motorcar Company agreed to give to the plaintiff, Rackley, a limited agency for the purpose of selling automobiles, etc., in the city of Purcell and the vicinity thereto until September 30, 1914.

The parts of the contract involved in this lawsuit are sections 35 and 48, which are as follows:

"Section 35: The second party shall have the right and privilege of returning to first party at the place of purchase at any time during the term of this contract, or within thirty days after its cancellation or expiration at his own expense, for credit at the purchase price, all such new parts of first party's automobiles as he may desire except bodies, tops, tires, lamps, generators, speedometers, windshields, and other equipment known in the trade as accessories, provided same are in as good condition as when sold by the first party to the second party."

"Section 48: This contract shall continue in force, and govern all transactions between the parties, until September 30, 1914, but it is agreed that either party shall be at liberty with or without cause to cancel and annul this contract at any time upon written notice by registered mail to other party, and such cancellation shall also operate as a cancellation for all orders for automobiles, automobile parts, or attachments which may have been received by first party from the second party prior to the date when such cancellation shall take effect."

The amended petition filed in this cause alleges the execution of the contract, the performance by plaintiff of all the conditions imposed upon him thereby, and a breach thereof by the company before September 30, 1914, by notice as provided in contract, and that as a proximate result of the breach of said contract plaintiff has suffered damages in the sum of $228.40, as stated therein, and further has been damaged in the sum of $577.50, profit of seven automobiles which he would have sold within the territory allotted to him by his contract before September 30, 1914, if the company had not breached the contract by taking the agency away from him and giving it to another party. To this amended petition the company admitted liability for all of the items sued for, save one item of $113.26 for repairs and damages, and the item of $577.50 for profits which the plaintiff claimed he would have made as stated above. And the company demurred to the amended petition as to these two items, and the trial court overruled the demurrer, whereupon the company stood upon the demurrer and appealed to this court;

so the only question involved here is whether the trial court committed an error in overruling the demurrer to the amended petition of the plaintiff. When we consider the allegations of the petition upon these two matters in connection with the contract which is the basis of the action, we find that section 35 of said contract gave to Rackley the right and the privilege of returning to the first party at the place of purchase at any time during the term of the contract, or within 30 days after its cancellation or expiration at his own expense for credit at the purchase price, all such parts of an automobile as specified therein. There is no allegation in this amended petition that the plaintiff, Rackley, had performed or had attempted to perform said contract or made any effort to comply therewith by returning said repairs to the company in order that he might receive from the company credit for the purchase price of said repairs. And in the absence of such an allegation we must hold that the amended petition did not state a cause of action against the company for the repairs.

The contract further provides that the same shall continue in force and govern all transactions between the parties until September 30, 1914. But there is a further provision that either party to said contract shall be at liberty, with or without cause, to cancel and annul the contract at any time upon written notice by registered mail to the other party, and such cancellation shall also operate as a cancellation of all orders for automobiles, etc., which may have been received by the company from Rackley prior to the date when such cancellation shall take effect. There is no allegation of fraud, duress, or mistake made by either party thereto. The contract is clear and free from ambiguity, and unquestionably gave to each of the parties hereto the right to cancel or annul the contract at any time prior to September 30, 1914. And inasmuch as Rackley unquestionably had the right to cancel this contract, revoke his agency, and refuse to act for the company thereunder at any time prior to September 30, 1914, by giving the notice prescribed by the contract, the same privilege must be accorded to the company under the terms of this agreement which these parties voluntarily made.

The fact that Rackley incurred expenses in order to comply with the provisions of the contract which he obligated himself to do at the time he executed the same cannot deprive the company of the rights given to it by the contract to annul or cancel the same at any time prior to September 30, 1914, by giving the notice prescribed therein. We must construe this contract as we find it—neither add to nor take from. And to permit the plaintiff, Rackley, to recover the profits on automobiles, which he could have sold after the cancellation of the contract and before September 30, 1914, would be giving that construction to the contract which is contrary to the terms thereof, and compelling the parties to remain bound by a contract long after the same has expired by its plain operation, and thereby rendering nugatory that part of the contract which provides, "but it is agreed that either party shall be at liberty, with or without cause, to cancel and annul this contract at any time upon written notice by registered mail to the other party," etc. These were not idle words: they were clearly and evidently understood by the parties when they executed this contract. And, inasmuch as the parties hereto have provided how this contract may be canceled and annulled, a compliance therewith must necessarily end their relations thereunder.

If Rackley is entitled to recover for any profits he would have made by sales after the cancellation by the company of the contract, he would be entitled to recover for all up to September, 1914. Such a construction is not supported by the contract. The authority or power of Rackley under the contract is not coupled with such an interest as precludes a cancellation. The case of Cloe v. Rogers, 31 Okla. 255, 121 Pac. 201, 38 L. R. A. (N. S.) 366, does not apply here.

In Foster v. Henderson et al., 29 Or. 210, 45 Pac. 899, we find a contract whereby Foster agreed to devote his entire time and ability for one year from the 20th of February, 1893, to the 20th of February, 1894, as a salesman, for which he was to receive $200 per month during said year, except the portion thereof that through illness or other cause was not devoted to the interest of Henderson, although, if he sold $70,000 worth of leather for Henderson during the year, there was to be no reduction from the salary for loss of time, and the contract further provided that this agreement might be canceled by either party at any time by giving fifteen days' notice. The court in its opinion said:

"By the terms of the contract it is agreed that plaintiff should devote 'his entire time and ability' to the interests of the defendant for which he was to be paid $200 per month 'during the year, except the portion of said time that, through illness or any other cause is not devoted to their interests, although, if he sells $70,000 worth of leather goods for them during said time, then there is to be no reduction from said salary for loss of time.' By this provision the time lost through

illness or otherwise was not to be paid for unless plaintiff should make sales to the amount specified, and there is no allegation or claim that he did so. But it is said defendant exercised its option to terminate the contract before the expiration of the year, and thus deprived plaintiff of the opportunity to make the necessary sales. But defendant had a perfect right to terminate the contract at any time upon the requisite notice, and there is no stipulation therein that plaintiff should be allowed to make any designated amount of sales, or that he should have any longer time than the life of the contract in which to endeavor to do so. He was employed to sell goods at a stipulated salary for the term of one year, with a provision allowing the contract to be canceled by either party at any time upon 15 days' notice; and, when so terminated, all rights under it ceased, and plaintiff's compensation must be determined by the condition of affairs at that time."

In McCormick Harvesting Machine Co. v. Cordsiemon, 101 Ill. App. 140, it is said:

"Where a contract itself provides the method for its rescission, it should be followed. * * * There is no pretense that Martin discharged appellee for cause. He discharged him simply because he did not think the business justified his retaining him. That being his sole reason, he should have given the written notice specified in the contract."

The Supreme Court of Michigan in Cummer v. Butts, 40 Mich. 322, 29 Am. Rep. 530, said:

"Now the written agreement expressly provided for a revocation by either party on a notice of 60 days and prescribed no other condition than that there should be 'good cause.' It made no provision that the party who should thus put an end to the contract in accordance with itself should indemnify the other for the loss of expected gains, and of course contemplated nothing of that kind. Such a termination of the contract would be pursuant to itself and would have the assent of the parties as originally given in the instrument. There would be no breach to give rise to a cause of action."

The Court of Appeals of New York in Crawford v. Publishing Co., 163 N. Y. 404, 57 N. E. 616, said:

"Where plaintiff offered to write for defendant newspaper for two years, providing that his services should be satisfactory to the publishers and in case they were not that he should have one week's notice, which offer was accepted, defendant, on giving one week's notice, had the right to discharge plaintiff at any time if his services were unsatisfactory for any reason, of which defendant might be sole judge."

The Supreme Court of the United States, in Lyon v. Pollard, 20 Wall. 403, 22 L. Ed. 362, said:

"The only object or purpose of any notice in the case was to appraise the party on whom it was served that the other party intended to terminate the contract. The contract itself fixed the time when this should take place, namely, 30 days after its service. The fact that the notice refers to a past notice and speaks of the termination of the contract as being already accomplished does not destroy its effect as a notice of present intent to put an end to the arrangement. This notice of intent the contract makes effectual at the end of 30 days, and as the court was asked to instruct the jury."

In Derry v. Board of Education, 102 Mich. 631, 61 N. W. 61, the Supreme Court of Michigan said:

"Where a contract of employment provides that it may be terminated by the employer on one week's notice, the employe is entitled to only one week's salary as damages on refusal of the former to continue his employment."

In Warren-Scharf Asphalt Paving Co. v. Laclede Construction Co., 111 Fed. 695, 49 C. C. A. 552, the Circuit Court of Appeals for the Eighth Circuit said:

"The Warren-Scharf Asphalt Paving Company, the plaintiff in error, sued the Laclede Construction Company, the defendant in error, upon a contract dated March 14, 1899, whereby the former company agreed with the latter company to furnish the materials and perform the necessary work and labor in the construction of a railroad from Peoria, Ill., to East Clinton, in the state of Illinois. In one count of the petition it was alleged that the defendant company was indebted to the plaintiff company in the sum of $11,159.12 for work actually done and performed in the execution of said contract, for which sum the plaintiff prayed judgment. In another count of the petition it was alleged, in substance, that after work to the value of $11,159.12 had been performed, and on or about May 27, 1899, the defendant company, without any default on the plaintiff's part, abrogated the contract and refused to allow the plaintiff to proceed further in the performance of the same; that, if the plaintiff had been allowed to perform its said agreement, it would have realized a profit in the sum of $130,000, for which latter amount it prayed judgment in addition to a judgment for the value of the work actually performed at the time the contract was abrogated. The defendant company pleaded, in substance, that the contract in question contained the folowing provision, known as 'paragraph 12': 'The party of the second part (namely, the Laclede Construction Company) shall have the right at any time, and for any reason which may appear satisfactory to said party, to suspend the prosecution of the work embraced in the contract, either temporarily or permanently, upon giving ten days' notice to the party of the first part (namely, the War-

ren-Scharf Asphalt Paving Company) of his intention so to do, in which event said party of the first part shall be entitled to payment in full for the work done by it up to the time of such suspension, subject to such deductions as are herein elsewhere provided for; but such suspension shall not give to the party of the first part any claim for damages therefor against said party of the second part."

"The defendant company further pleaded that on May 27, 1899, by virtue of the aforesaid provision of the contract, it notified the plaintiff to permanently suspend the prosecution of the work embraced in the contract upon the expiration of ten days from said date, and that the plaintiff then and there agreed. * * * to waive the ten days' notice required by the provisions of the contract.

"On the trial of the case the defendant company admitted an indebtedness to the amount of $11,159.12 on account of work actually done at the time the contract was abrogated, and made a tender of that amount, whereupon a judgment was entered therefor on the second count. Upon an inspection of the contract the trial court ruled that the provision of the contract above quoted empowered the defendant company to abrogate the contract on ten days' notice without liability for damages, and, in accordance with that view of the case, directed a judgment to be entered in favor of the defendant company on the first count of the petition, wherein the plaintiff sought to recover unearned profits. The case was brought to this court upon a writ of error by the plaintiff company. The sole question, therefore, which the record presents is whether the trial court properly construed the twelfth paragraph of the agreement. We are of the opinion that the clause of the contract in question was properly interpreted and enforced by the trial court. Indeed, the meaning of the clause is too plain to admit of any controversy. The parties to the agreement had in mind both a temporary and a permanent suspension of the work, and, in language which cannot be misunderstood, stipulated that the defendant company might suspend operations under the contract, either temporarily or permanently (that is, abrogate the contract altogether), on ten days' notice. And as if to make their purpose and intent more clear, and to put the matter beyond dispute, they further agreed that, if operations under the contract were suspended, the party of the first part should not have any claim for damages. In other words, the right was reserved by the defendant company to put an end to the agreement at any time on ten days' notice, without liability for damages. It was entirely competent for the parties to enter into such an agreement, and such stipulations are sometimes found in contracts for the construction of railroads, and for the doing of other work of a like character, where unfore-

seen events may occur to render a temporary or permanent suspension of the work both desirable and necessary."

Also in Morrissey v. Broomal, 37 Neb. 779, 56 N. W. 386, the Supreme Court of Nebraska said:

"The contract between the appellant and appellees contained this clause: 'This contract shall be terminated on the 1st day of March, 1890, Wanzer & Co. reserving the right to terminate the same by giving 30 days' written notice; and on the termination of this contract, either by such notice or at the the expiration of the time herein agreed, said Wanzer & Co. shall be entitled to collect from said Morrissey a sum equal to one-half the charges said Wanzer & Co. would receive on the grain said Morrissey shall then have on hand, according to the aforenamed rates in this contract.' On November 18, 1889, appellees notified appellant in writing of their election to terminate said contract on December 20, 1889, and on said last date appellees terminated the contract. The appellant's next point is that the contract between him and the appellees was to continue in force until March 1, 1890, notwithstanding the agreement therein that the appellees might terminate it sooner. Appellant bases this contention on an agreement which he alleges existed between himself and appellees to that effect, outside of the instrument itself. The court found this issue against the appellant, and rightfully so. We cannot stop here to quote the correspondence between the parties leading up to the execution of this agreement, but it settles beyond all doubt that the contract as signed and as it exists is in all respects as all parties thereto understood it at the time of its execution. The evidence shows that the appellees refused absolutely to contract with appellant on any terms, unless the right to terminate the contract on 30 days' notice was reserved to them in the instrument. There was much correspondence between the parties on this very clause prior to the execution of the contract; and it is a waste of words, in the face of this record, to say that appellant did not know that the right to terminate the agreement was reserved, or that there was any agreement or understanding, even on appellant's part, that the contract should, at all events, run to March, 1890. Appellant contends, however, that notwithstanding the clause in the agreement reserved to appellees the right to terminate it on giving 30 day's notice, the contract could not, as a matter of law, be thus terminated. We do not so understand the law. When the right to terminate a contract on notice is reserved without any fraud or mistake, but with the actual knowledge and consent of all parties to the agreement, it is as valid in law as any other clause of the instrument; and the courts, when called upon, will enforce it, un-

less to do so would be manifestly contrary to equity and good conscience. In Irland v. Dick (130 Pa. 299) 18 Atl. 735, the Supreme Court of Pennsylvania say: 'The appellants accepted a license from the appellees for the manufacture of drilling jars.* * * The agreement was in writing; that is, it was a printed form, filled in as to names, dates, etc., in writing and with the addition in the right-hand margin of the following stipulation; "It is agreed by the parties of the first part that the parties of the second part can cancel this license by giving thirty days' notice in writing." This portion of the instrument * * * is presumed to express the exact agreement of the parties upon the subject. Both of the parties acted under the agreement until December 19, 1878, when the licensees under the written clause * * * sent a notice to the licensors in the following terms: "We wish to cancel our license concerning the manufacture of drilling jars * * * as per contract." It is entirely clear that this letter was an absolute and complete rescission of the agreement.'

"The district court found that the appellant was not entitled to recover any damages from the appellees by reason of their having terminated the contract and that finding is the next in order of appellant's complaints; and this claim for damages is based solely on the assumption that the appellees violated their contract with the appellant. But did they? The contract was terminated in accordance with its provisions. There is no evidence tending to show that it was terminated by the appellees for a sinister purpose, nor that in exercising their right to terminate it they acted maliciously or arbitrarily. Indeed, the evidence would support a finding that the appellant's own violation of the contract afforded sufficient grounds for its termination by the appellees, had the contract by its terms required the existence of such grounds as a prerequisite to the right of the appellees to terminate it. The evidence shows that the appellees, however, in no respect violated either the letter or the spirit of the contract; nor has the appellant sustained any damages by reason of its termination for which appellees can be made liable. The losses, if any, suffered by the appellant in consequence of the termination of the agreement were such only as he must have known, when he signed the contract, might ensue if it should be terminated according to its provisions."

Under the authorities cited above we are of the opinion that the trial court should have sustained the demurrer to that part of the petition which sought to recover damages based upon profits which the plaintiff below claimed he would have made had the contract not been canceled by the company, and the judgment of the lower court is therefore re-versed, and this cause remanded, with directions to the trial court to sustain the demurrer to the amended petition as to the two items set forth above.

By the Court: It is so ordered.