## Seanor & Bierer, Appellants, *v.* Samuel McLaughlin.

*Bailment—Contract—Rescission—Collateral security.*

Where a contract of bailment in the form of a lease provides for the delivery of a machine at a certain hire, payable in installments, the lessor to retain title until the last installment is paid. and the contract is accompanied by a bond with a warrant of attorney to confess judgment, " as collateral to secure the rental," the lessor may, upon default in the payment of one of the installments, either rescind the contract and take possession of the machine, or enter judgment upon the bond. The two remedies are however not cumulative, and if the lessor resumes possession of the machine, he cannot enter judgment upon the bond.

In the above contract the lessee stipulated that " if default be made in said payments or any of them, then, in that case, I hereby covenant and agree to return said machine to said Seanor & Bierer, and that they or their agents may resume actual possession of the same." *Held,* that the lessor had a right to rescind the contract, notwithstanding the fact that the words " rescission " or " rescind " were not used in it.

Argued Oct. 2, 1894.    Appeal, No. 45, Oct. T., 1894, by plaintiffs, from judgment of C. P. Westmoreland Co., Feb. T., 1890, No. 414, on verdict for defendant.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Issue to determine validity of judgment.   Before DOTY, P. J.

At the trial it appeared that judgment had been entered upon a bond given by defendant to plaintiffs as collateral security for the payment of certain installments of hire of a threshing machine and traction engine.   The lease under which the machines were hired provided as follows :

" Know all men by these presents :  That I, Samuel McLaughlin, of Salem borough, Westmoreland county, Penn'a, have leased and received of and from Harry F. Seanor and Daniel Bierer, partners as Seanor & Bierer, of Latrobe, said county, the following agricultural implements or machines, to wit :  One Springfield traction engine No. 1499 and one J. I. Case Separator, No. 11421, of the value of seventeen hundred dollars, which I am to use with care and keep in good order, and

" In consideration thereof, I have covenanted and agreed, and hereby do covenant and agree, to hire said machines from the said Seanor & Bierer, from the date hereof until the first day of January, 1892, and to pay during the said term for the use thereof the sum of seventeen hundred dollars ($1700), as follows, to wit :  On the execution and delivery hereof to deliver to the said Seanor & Bierer one old engine of the value of $750 ; $316.67 on the first day of January, 1890 ; $316.67 on the first day of January, 1891, and a like sum of $316.67 on the first day of January, 1892, with interest payable annually.   And as collateral, to secure the payment of said rentals, I have executed and delivered to said Seanor & Bierer my judgment bond of even date herewith payable as aforesaid..  If default be made in said payments or any of them, or if I shall sell or offer for sale, remove or attempt to remove said machines or either of them from said county of Westmoreland without the written consent of said Seanor & Bierer, then and in that case I hereby covenant and agree to return said machines to said Seanor & Bierer, and that they, the said Seanor & Bierer, or

their agent, may resume actual possession of the same ; and I hereby further authorize and empower the said Seanor & Bierer, their agent or assigns, to enter the premises wherever said machines may be and take and carry the same away, waiving and releasing any action for trespass or damages by reason thereof and any right of resistance thereto. It being understood and agreed that I may at any time within said term purchase said machines by paying the above valuation therefor and that then and in such case only the rentals theretofore paid shall be deducted therefrom and allowed as a credit upon said valuation."

A judgment bond was given as collateral to the rent.

Plaintiff paid the sum of $750, but was unable to pay the first annual installment. Plaintiffs thereupon resumed possession of the machines, but refused to surrender the bond to defendant. Plaintiffs subsequently entered judgment upon the warrant contained in the bond. The court opened this judgment, and the present issue was framed.

The court charged in part as follows:

" [The defence is that there was a rescission of the contract. It is contended that the plaintiffs could do one of two things. They could either enforce the contract, that is, demand the payment of the rental as it matured, or they could rescind the contract ; that is, they could take the machines back, in accordance with this particular stipulation. The plaintiffs elected to rescind, in the way that is provided for in the article of agreement; they elected to take back the machines on the 2d of January, 1890. Leases very similar to this lease, and so similar that we are unable to discriminate between them at this time, have been construed more than once by the higher court of our state, and by such construction this court is bound. We must carry out as far as we can the law as it is laid down by the Supreme Court of the state. And it is held under such circumstances, as we understand it, that where there is a stipulation of this kind, even though the payments, according to the terms of the lease, are not due at the time, but where the party elects to rescind in this way, by taking back the machinery, the whole contract falls. This bond that we have spoken of, is part and parcel of this agreement. They are to stand or fall together, and the plaintiffs in this case could have taken either alternative. They could have enforced the payments according to the

terms of the contract, or repossessed themselves of the machinery. But they cannot do both. They could not recover the payment maturing on the first of January, 1890, and also take possession of the machine.] [2]

" [Following this line of authority, we feel it incumbent on us to say to you as matter of law that, it being undisputed here that there was a rescission, there is nothing for the jury to pass upon; that the defendant was not liable under the terms of that bond to pay any more rental after that time. The whole amount was $1,700, according to the plain terms of this agreement. This would be an average of $62.50, or thereabouts, per month, for a period of twenty-seven months.

" The defendant further contends that there was no rent in arrears, as we understand his contention, at this time. That is, the rental that was paid by the exchange of the traction engine on Sept. 2, 1889, covered the period fully up to the first of January, 1890, and that this second installment was not to pay for the period during which defendant had held possession of these machines, but it was rent in advance, for the next period that ensued after the first of January, 1890; and the position of the defence is, that the plaintiffs' resuming possession of the property before the termination of that particular term for which the contract provided, forfeited the right to recover the rental. Seven hundred and fifty dollars were paid, according to the agreement, on the second of September, 1889. No other payment was due until the first of January, 1890. If this payment were made, the plaintiffs would receive the sum of $750, the value of the old engine, and the sum of $316.67, or $1,066.67. And this for the use of the machines for the period of three months, and which would leave only about $683 for their use for the remaining two years.] [3]

" [It is not necessary now to decide the particular point whether the installment due January 1, 1890, was for rent from the 2d of September until the 1st of January, or whether it was rent in advance, but the contention of the defendant is that the plaintiffs had no right to demand the rent due the 1st of January, 1890, and then take possession of the property.

" On the other branch of the case we deem it our duty to say to you that plaintiffs cannot recover; that they have rescinded their contract, and the contract being rescinded, the bond falls

also; that they have no right of action and it is your plain duty to render a verdict for the defendant.] " [4]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were (1) answers to five points; (2–4) above instructions; quoting points, answers and instructions.

*V. E. Williams, A. M. Sloan* and *W. A. Griffith* with him, for appellants, cited: 1 Wait's Actions and Defences, 84; Shafer v. Senseman, 125 Pa. 310; Duffield v. Hue, 129 Pa. 94; White v. Smith, 33 Pa. 186; Burkhard v. Ins. Co., 102 Pa. 262; School Dist. v. Derr, 115 Pa. 439; Leatherman v. Oliver, 151 Pa. 646; Tiley v. Moyers, 43 Pa. 404; Kessler v. McConachy, 1 Rawle, 435; Gallagher's Est., 76 Pa. 306; Greider's Ap., 5 Pa. 422; Milling v. Becker, 96 Pa. 182; Galey v. Kellerman, 123 Pa. 491; Wills v. Gas Co., 130 Pa. 222; Ogden v. Hatry, 145 Pa. 640; Leatherman v. Oliver, 151 Pa. 646; Hamilton v. Billington, 163 Pa. 76.

*James M. Peoples, D. S. Atkinson* with him, for appellee, cited: Campbell v. Hickok, 140 Pa. 290; Scott v. Hough, 151 Pa. 630.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895:

The plaintiffs were manufacturers of agricultural implements. The defendant traveled from place to place threshing farmers' crops. On the second of September, 1889, the plaintiffs put in defendant's possession a traction engine and thresher, he to use the same with care and keep in good order. The contract was one of hiring or bailment. As the parties evidently intended the event should be an absolute purchase, for security, the vendors retained the title until final payment of the hire. The sum of the hire was the price of the machine, $1,700, to be paid as follows: on delivery, $750; on the 1st of January, 1890, $316.67, with interest; and a like sum on the 1st of January, 1891 and 1892, with interest. As collateral, " to secure the payment of said rental," the defendant executed and delivered to plaintiffs a judgment bond of same date, in the penal sum of $1,900, conditioned for the payment of the three installments with interest; and further stated: " This bond is given

as collateral to secure the rentals for certain machines leased by obligor from obligees." The first payment of $750 was made, and the defendant took possession of the machine and used it in threshing the crop of 1889.

Some time before the 1st of January, 1890, the defendant informed Seanor, one of the plaintiffs, that he would be unable to pay the first installment of $316.67. On that day, Seanor called on defendant and demanded payment, who again told him he was not able to pay, and that Seanor should take the machine away; Seanor then examined it and the same evening arranged to have it removed. Defendant demanded his bond, or a receipt for it, before the machine was taken away, but Seanor refused to give either, and early on the morning of the 3d of January, removed it. After taking the machine, on the same day, plaintiffs confessed judgment on the bond, and issued· execution for the first installment. On petition and affidavit of defendant, the court opened the judgment, and awarded an issue. At the trial the facts were, in substance, as we have stated them. The court below was of the opinion that: 1. The rights of the parties were to be determined by the written contract between them, the lease and the bond. 2. That on default of payment of any installment, plaintiffs could enter judgment and· collect by execution, or rescind the contract, and repossess themselves of the machine, but could not adopt both remedies. 3. That the undisputed evidence showed a rescission of the contract, and thereafter defendant was no longer answerable on the bond. Therefore, a verdict was directed for defendant. From the judgment entered, plaintiffs press this appeal.

The merit of the assignments of error depends solely on whether the construction given by the learned judge of the court below to the written contract, as set out in the lease and bond, was right. The contract was to pass the possession of the machine to the defendant, and to make secure the payment of its value to the plaintiffs. Its value, as fixed by both parties, was $1,700. It is fair to presume, the plaintiffs intended by the contract to get this sum once, and that defendant did not intend to pay it or any part of it twice. Parties may, in contracting, provide penalties for non-performance, but, unless they do so in unmistakable language, courts will not insert

them. In the lease, after specifying the three installments and their dates of payment, the defendant immediately said: "And as collateral to secure the payment of said rentals, I have executed and delivered . . . . my judgment bond of even date herewith." Then almost the last words of the bond are: "This bond is given as collateral to secure the rentals." The principal obligation by the contract, was to pay for the machine $316.67 with interest on the 1st of January of the three following years; and "If default be made in said payments . . . . they, said Seanor & Bierer, or their agent, may resume actual possession of the same; and I hereby further authorize and empower the said Seanor & Bierer . . . . to enter the premises wherever said machines may be, and take and carry them away."

This was primarily the obligation to pay, and the remedy to enforce payment. Plaintiffs retained title to the chattel, with the right to resume possession in default of payment of the hire. Then the judgment bond is given, in express terms, as a security collateral to the performance of this principal obligation. There is no technical legal definition of the word collateral, distinct from its common signification; it is an additional security for the performance of the principal obligation, and, on the discharge of the latter it is to be surrendered. Therefore the plaintiffs had two distinct remedies, either of which they might adopt to enforce their right. They parted with the possession of the machine at the price of $1,700; $750 of this to be paid in hand, which they received; they still retained title, with the right to resume possession on default in either payment of $316.67. But the subject of the contract being a movable chattel, and this security being at best little more than a chattel mortgage, they took a personal judgment bond with power of attorney to enter it and confess judgment in any court of record of the United States or elsewhere, as collateral to the original obligation. Either remedy was complete in itself, and the plaintiffs, on default, could adopt either; but they were not cumulative; they could not adopt both, unless it was plainly expressed in the contract, or a necessary implication from its terms. The words of this contract negative such a construction; the defendant stipulates that "if default be made in said payments or any of them, . . . . then, in that case I hereby covenant and agree to return said machines to

said Seanor & Bierer, and that they . . . . or their agent may resume actual possession of the same." That was the penalty for default on the primary obligation, and repossession of the machines the discharge of it. On default of payment the plaintiffs were not bound to accept the machine or take possession of it; they could have entered judgment on the bond, levied on the machine and any other property of the defendant, in satisfaction of their demand. But they rescinded the contract by retaking into their possession the subject of it, which they had a right to do, and then immediately entered their bond and issued execution to levy on other property of defendant, which they had no right to do, for the contract or obligation, to which the bond was collateral, no longer existed. It ought to have been surrendered to defendant when he demanded it at the time plaintiffs took away the machine.

The contract in this case is not essentially different from those in Campbell v. Hickock, 140 Pa. 290, and Scott v. Hough, 151 Pa. 630, in both of which cases we held that the remedies were distinct and not cumulative. If the bailor rescinded by repossessing himself of the property, the right of personal action against the bailee was at an end. That the words "rescission" or "rescind" do not occur in this contract, is not material. Rescission is a fact; the word itself may be used by the contracting parties to indicate the right, but other words may be adopted to point out that course of conduct of the parties which shall constitute the fact of rescission.

The decision in Campbell v. Hickok, supra, was based on the stipulation of the contract that the lessor had the right, on lessee's failure to pay any installment, to repossess himself of the property, and, having exercised this right, the contract was rescinded in fact, and there was an end of personal obligation on part of lessee. While the word "rescinded" is used in that contract, the right to rescind and the act necessary to a rescission are plainly expressed without it, and the interpretation was fully warranted even if the word had not been used.

Here the plaintiffs, in effect, in their contract, stipulated that, on default of payment of rental, they should have the right to take the machine back to make good the default; there was default, and because of it, they took back the machine. This

was both a right to rescind and the exercise of the right, or a rescission in fact. The construction put upon the whole contract by the learned judge of the court below was right. Therefore the assignments of error are overruled and the judgment is affirmed.