MESA MARKET CO. v. CROSBY et al.

(Circuit Court of Appeals, Eighth Circuit. October 11, 1909.)

No. 2,842.

1. LANDLORD AND TENANT (§ 5*) — CONTRACTS OF SALE — VALIDITY OF CONDITION — CONVERSION OF CONTRACT INTO LEASE ON DEFAULT.

A provision in a contract for the sale of real estate, under which the purchaser is given possession, that if he shall make default in the performance of any of his engagements the vendor may resume possession and terminate all rights of the purchaser, and that in such case the contract shall become one of lease, and any payments by the purchaser or improvements made on the property shall be considered as rental, is valid and enforceable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 3; Dec. Dig. § 5.*]

2. VENDOR AND PURCHASER (§ 148*) — BREACH OF CONTRACT BY VENDOR — DEMAND FOR PAYMENT IN PARTICULAR MANNER.

Where vendors of real estate in Colorado resided in Boston, in the absence of a contrary provision in the contract, the purchase money was payable there; and where tender of the deed was made by their agent in Colorado, a demand for payment by certified check was for less than legally demandable, and did not constitute a substantial breach of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 293; Dec. Dig. § 148.*]

3. VENDOR AND PURCHASER (§§ 133, 350*) — ACTION BY PURCHASER FOR BREACH OF CONTRACT — DEFECT IN TITLE — BURDEN OF PROOF.

Under a contract for the sale of real estate, which required the vendors to convey "by a good and sufficient warranty deed in the usual form," they are not bound to convey by a title deducible of record; and where the purchaser refused to accept the deed tendered, and sued at law for damages for breach of the contract, on the ground that the deed tendered did not comply with its requirements, he assumes the burden of proving that it did not convey a good title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 234-237; Dec. Dig. §§ 133, 350.*]

4. COVENANTS (§ 68*) — COVENANTS RUNNING WITH THE LAND — COVENANT BY CONTRACT PURCHASER TO KEEP BUILDINGS IN REPAIR.

In a contract for the sale of real estate, under which the purchaser is given possession, and which provides that it shall be binding on the heirs, executors, assigns, and successors of the respective parties, a covenant by the purchaser to make all repairs proper and needful for the suitable maintenance of the buildings and improvements then on the property is one which runs with the land and is binding on an assignee of the purchaser.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 65, 66; Dec. Dig. § 68.*]

5. APPEAL AND ERROR (§ 173*) — ISSUES AND QUESTIONS IN LOWER COURT — ASSERTING NEW DEFENSE IN APPELLATE COURT.

Where the answer to a cross-complaint in an action at law, pleading a counterclaim, was merely a general denial, and the issue of fact thus joined was tried, submitted to the jury, and determined without objection, and without any other defense to the counterclaim being suggested, the question whether defendant was barred by estoppel from maintaining such counterclaim cannot be considered for the first time in the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1102; Dec. Dig. § 173.*]

Philips, District Judge, dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of Colorado.

Action by the Mesa Market Company against Henry V. Crosby, as administrator of the estate of Lucy Crosby, deceased, and others. Judgment for defendants on cross-complaint, and plaintiff brings error. Affirmed.

This was an action at law brought by the Market Company to recover damages for an alleged breach of an agreement made by defendant Crosby and other heirs of one Henry D. Fales to sell and convey to plaintiff's assignor, the Colorado Implement Company, certain lots of ground situate in the city of Pueblo, Colo. The agreement bore date May 6, 1899, and obligated the heirs, upon the payment of $12,000 in certain installments and at certain fixed times, to sell and convey "by a good and sufficient warranty deed in the usual form" the lots in question to the Implement Company. It provided that possession be forthwith given to the Implement Company, and retained by it until default should occur in the performance of some of the stipulations of the agreement on its part; that the Implement Company and its successors should pay all taxes and assessments as and when they became due, and make all repairs proper and needful for the suitable maintenance of the buildings and improvements on the premises; that upon default by the Implement Company in the performance of any of its engagements the heirs should have the option to resume possession of the premises, including improvements made thereon, and thereby terminate all rights of the Implement Company under the contract; and in such event any installments of the purchase price which might have been paid and any improvements which might have been made were to be considered as the rental of the premises during occupancy by the Implement Company. It was alleged in the complaint that although the plaintiff was ready, willing, and able to make full payment, as permitted by an alternative provision of the contract allowing anticipation of final payment, in 1905, and although the plaintiff then tendered such payment and demanded the required deed of conveyance, the defendants declined and refused to make it unless the plaintiff would pay the further sum of $3.25, which the defendants claimed to have been compelled to pay for telegraphic service connected with the deal, and would also make the payment of the amount due in the form of a certified check payable to William P. Hale. It was claimed that these requirements were unwarranted, and constituted a breach of the contract by defendants, which justified plaintiff in refusing to accept the deed tendered by them. Plaintiff also alleged that the defendants broke the contract by refusing to execute and tender to it "a good and sufficient warranty deed in the usual form," in this: That the deed offered did not convey a marketable title deducible of record.

The defendants, for answer to the complaint, denied that plaintiff was ready, able, or willing to pay the amount due as required by the contract, and denied that plaintiff ever tendered such an amount to the defendants, but averred that they were ready and willing to convey a good and sufficient title by warranty deed in the usual form to plaintiff, and offered to do so, but that plaintiff without lawful excuse refused to receive the same and make payment therefor, according to the terms of the contract. Defendants then by way of cross-complaint or counterclaim alleged that the plaintiff, while in possession of the premises as assignee of the Implement Company from March 25, 1902, until March 6, 1906, failed to make the repairs thereon which were proper and needful for the suitable maintenance of the premises, and thereby violated the stipulation of the contract obligating the Implement Company and its successors so to do, and damaged the defendants in the sum of $5,000, for which they prayed judgment against the plaintiff. The answer to this cross-complaint merely denied that plaintiff had failed to make the required proper and needful repairs.

Upon these issues the cause went to trial before a jury. The court instructed a verdict in favor of the defendants on plaintiff's cause of action, and submitted the issue of fact tendered by the counterclaim to the jury for

its determination. The jury found for defendants thereon, and assessed their damages in the sum of $750. Thereupon the case was brought here on error. The errors assigned are that the trial court erred in instructing a verdict for the defendants upon plaintiff's cause of action for two reasons: First, because the evidence showed that the defendants exacted, as a condition to their conveying the property to the plaintiff, the payment of $3.25 for money paid by them for telegraphing incident to closing the deal, and also required payment of the amount due under the contract in the form of a certified check payable to William P. Hale; and, second, because the record showed that the defendants did not and could not offer to convey the premises "by a good and sufficient warranty deed in the usual form," as required by the contract, in this: That they did not and could not tender a marketable or perfect title as shown by the land records. It is also claimed that the court committed certain errors in submitting the counterclaim to the jury, which will be stated in the opinion.

Miles G. Saunders and Alva B. Adams, for plaintiff in error.

Robert S. Gast, for defendants in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). To avoid unprofitable repetition, the Implement Company and its assignee, the Mesa Market Company, will be referred to indiscriminately in this opinion as the purchaser, unless otherwise specified.

The contract in question was primarily one for the sale of real estate. The purchaser was to be given quiet and peaceable possession, and any default in the performance of the undertakings imposed upon it entitled the vendors to resume possession and terminate the right to purchase. If the option should be exercised, all installments of purchase price paid and all improvements added to the premises were to be regarded as rental of the premises during the occupancy of the purchaser. In other words, the lawful exercise of the right to resume possession ipso facto converted the contract of sale into one of lease. There is abundant authority to the proposition that where a purchaser goes into possession of premises under a contract of purchase, and afterwards makes default and refuses to complete the purchase, he may be treated as a tenant at the option of the vendors, and be held liable for use and occupation, even without a stipulation in the contract to that effect. 2 Warvelle on Vendors, § 882; Whittier v. Stege, 61 Cal. 238; Woodbury v. Woodbury, 47 N. H. 11, 90 Am. Dec. 555; Patterson v. Stoddard, 47 Me. 355, 74 Am. Dec. 490; Smith v. Wooding, 20 Ala. 324.

But we are not compelled to so hold in this case, because the contract of purchase by necessary implication of its provisions creates the relation of landlord and tenant as a consequence of default by the purchaser in the performance of its engagements. In October, 1905, the vendors asserted the right to resume possession because of a default in the payment of $4,000 which became due, as a part of the purchase price, on May 6, 1905, and later, in March, 1906, secured possession by a voluntary surrender thereof by the purchaser, not, however, until they had instituted a suit for that purpose. The evidence conclusively shows the failure to make the required payment by the purchaser and the exercise of the right to terminate the contract obligation to sell

by the vendors. These propositions are not seriously controverted; but the purchaser's contention is that prior to such termination it tendered the amount due according to contract, and that the tender was wrongfully refused.

The contention of the vendors is that the purchaser never tendered. payment at all, but that they were ready to and did tender a conveyance conforming in all respects to the requirements of the contract, and that the purchaser refused to accept and pay for the same. The controversy between the parties is, therefore, reduced to a question as to which first committed a breach of the contract.

Much discussion was had by counsel as to whether the Market Company made a legal tender of the purchase price of the lots, as it was required to do before demanding a deed (Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 72 C. C. A. 480); but this need not be considered by us. The parties seem to have passed beyond that issue by continuing negotiations for the consummation of the deal thereafter, and the only questions for our consideration, according to the assignment of errors, are (1) whether the vendors first broke the contract by exacting as conditions to making the conveyance the payment of the telegraphic charges and requiring that payment be made in a certified check as already stated; (2) whether they did so by not tendering a deed conveying a marketable title—that is, one deducible of record. Of these things in their order.

Little attention need be given to the claim that the contract was broken by demanding payment of the telegraphic charges. That was a trifling matter, and during subsequent negotiations the demand was waived, and the matter was left exclusively to the plaintiff's sense of fairness. Little also need be said concerning the next question. The vendors lived in Boston, and, if a proper legal tender was made to their agent in Colorado, it should have been in lawful money. The demand for a certified check was not for a check or other exchange on Boston, which, being the place of defendants' residence, in the absence of a provision of the contract to the contrary, was the place of payment, and the place where the tender should have been made, but was for a certified check merely. This demand would have been satisfied by a certified check drawn on a bank at the home of the purchaser in Colorado, and, if made, was for less than the vendors were entitled to, and constituted no substantial breach of the contract.

The real contest was not over these trifles, but arose over the conceded fact that the vendors did not tender a deed to the purchaser conveying a title shown by the land records of the county where the land was situated to have stood in their names. The contract, signed by Lucy Crosby, Herbert W. Hastings, Ada F. Gates, and Sophia W. Watson, obligated them to sell and convey the described lots by "a good and sufficient warranty deed in the usual form," and recited as an accepted fact that they constituted the only heirs at law of Henry D. Fales, deceased. The deed tendered was a warranty deed, signed and acknowledged by Lucy Crosby, Ada F. Gates, S    a W. Watson, and Elizabeth E. Hastings, and contained the following recital:

"The said premises were part of the estate of Henry D. Fales, deceased intestate, of Brookfield aforesaid, the said Lucy Crosby, Ada F. Gates, and

Sophia W. Watson, together with Herbert W. Hastings, of said North Brookfield, being the sole heirs at law of the said Henry D. Fales, and the said Elizabeth E. Hastings being the widow and sole heir at law of the said Herbert W. Hastings, deceased intestate. Reference is hereby made to the records of the probate court in and for the county of Worcester aforesaid; administration having been taken out on the estate of the said Henry D. Fales May 16, 1899, and administration having been taken out on the estate of the said Herbert W. Hastings, September 4, 1900."

It thus appears that the deed tendered was executed by the parties who agreed to do so, except in so far as Herbert W. Hastings was concerned. So far, then, there was a strict compliance with the obligation to convey. Mr. Hastings having died, Mrs. Hastings, representing herself to be the widow and only heir at law of Mr. Hastings, joined with the other defendants in the following covenant of warranty found in the deed:

"That they are well seised of the premises above conveyed as of good, sure, perfect, absolute, and indefeasible estate of inheritance in law in fee simple, and have good right, full power, and authority to grant, bargain, sell, and convey the same, in manner and form aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, and incumbrances of whatsoever kind or nature soever."

By these and other covenants the deed purported to be, and was without doubt, "a warranty deed in the usual form," warranting that the grantors were possessed of a good, unincumbered title in fee simple absolute to the premises conveyed. The deed tendered, therefore, responded to the obligation imposed upon the vendors by the contract. If the vendors failed to convey or offer to convey the lots as required by the contract, the purchaser had his election of remedies. It might have rescinded the contract and recovered back any part of the purchase price which it had paid, or it might have affirmed the contract and resorted to a court of equity to secure specific performance by the vendors, or it might, as was done in this case, have sued the vendors at law for damages for the breach of the contract. It elected to pursue the last-mentioned remedy. It went into a court of law and tendered an issue, namely, that the defendants, the vendors, did not tender to it a sufficient deed as required by the contract. It apparently did not desire the lots on the terms of the contract. It rejected the equitable remedy, by which it might have secured them upon terms possibly requiring a demonstration of title of record, but chose the strict action at law to recover damages for a breach of the contract.

In doing so it assumed the usual burden of proving the affirmative of the issue tendered by it. It matters not that this was negative in its character. The right of recovery depended upon proof that the vendors failed to tender a deed conveying good title. Neither the contract nor the pleadings based thereon imposed any obligation upon the vendors to convey a title deducible of record, and the mere fact that the one tendered does not appear to be such a title constituted no breach of the contract. A marketable title, or one deducible from the land records, is one which equity often requires to be established in suits for specific performance by vendors against purchasers, and the numerous authorities cited by plaintiff in its brief, viewed in the light of the equitable issues presented in those cases, cannot be gainsaid or

questioned; but they have no application to actions at law, like the present, where the right of recovery depends, not upon equitable consideration, but upon proof of a specific breach of the contract sued on.

Maupin, in the second edition of his treatise on Marketable Title to Real Estate, says, in section 2:

"A distinction is to be observed between the action to recover damages for breach of the contract or failure of the title and an action to recover back the purchase money, in this respect, namely: That in the former action the plaintiff cannot recover unless he shows that the title is absolutely bad, while in the latter he will be entitled to a return of the purchase money if there be a reasonable doubt about the title."

And in section 283 he says:

"If a purchaser sues to recover damages against his vendor for breach of the contract, it is not enough to show that the title has been deemed insufficient by conveyancers. He must prove the title to be bad."

In Meyer v. Madreperla, 68 N. J. Law, 258, 53 Atl. 477, 96 Am. St. Rep. 536, the Court of Errors and Appeals of New Jersey, after an interesting discussion of the differences between equitable and legal remedies for breach of contracts of sale, concludes its opinion thus:

"To recover at law for a breach of such a contract, it must be shown that the title tendered was not a title good at law. The discretionary power of a court of equity with respect to a title which is doubtful, though good, is not within the province of a court of law, or a jury therein. * * * Mr. Sugden remarks: 'Whether courts of law were at liberty to follow in the footsteps of equity, and to hold that a title may be too doubtful to be forced on a purchaser, is a question on which eminent judges have differed with each other, and even with themselves.' But, he adds, 'it appears to be ultimately settled that courts of law cannot adopt the equitable rule, and are bound to decide the legal question upon which the right to recover must depend.' "

For want of proof, therefore, by the plaintiff, upon whom the burden rested, that the warranty deed as tendered failed to convey a good and unincumbered title in fee simple, the purchaser failed to prove a breach of the contract as made, and failed to establish the issue of fact upon which its right of recovery depended. It follows the court committed no error in directing a verdict for defendants on plaintiff's cause of action.

Passing, now, to the counterclaim, whereby the vendors sought to recover damages from the purchaser for failure to make repairs, it may first be observed that many of the assignments of error are so general as to require or permit of no consideration at our hands, and many of them are not based on proper exceptions taken to adverse rulings. There are two, however, which fairly present these questions: (1) Whether the Mesa Market Company, in accepting the assignment of the contract from the Implement Company, assumed the personal obligation resting on the latter company to make repairs; and (2) whether the counterclaim, as pleaded by the defendants, stated a cause of action.

In 1902 the plaintiff, Mesa Market Company, took an assignment of a contract which, according to its provisions, was liable to be converted into a lease, and from that date until March, 1906, it remained in possession of the premises, claiming all the rights conferred by the

contract upon its assignor. It brought this suit on one of its covenants, and sought to recover for its alleged breach. The last clause of the contract stipulated as follows:

"It is mutually agreed that this agreement shall be binding upon the heirs, executors, assigns, and successors of the respective parties of the first and second parts hereof."

From the foregoing it cannot be doubted that the Mesa Market Company became bound, as between it and its assignor, to keep the covenant of the contract requiring its assignor to—

"make any and all repairs proper and needful for the suitable maintenance of such buildings and improvements as are now on the said premises."

This stipulation, in our opinion, is also a covenant running with the land, and inures to the benefit and advantage of the vendors as against any assignee. The test is: If a covenant is such that its performance or nonperformance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land, and binds assignees of the covenantor, as well as the covenantor and his personal representatives. Taylor's Landlord & Tenant (8th Ed.) §§ 260, 261, 444, and cases cited.

It is suggested, however, that there is some difficulty in enforcing this liability in the present case, because of the fact that the vendors exercised the right of avoiding the contract for nonperformance by the purchaser, and availed themselves of their contract right to appropriate the amounts paid and the improvements made by the purchaser. This, it is said, is tantamount to an election to forfeit the payments and improvements made by the purchaser, and exhausts the remedy of the vendors. The principles announced in Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, and Davis v. Wakelee, 156 U. S. 680, 690, 15 Sup. Ct. 555, 39 L. Ed. 578, are invoked to defeat the vendors' right to any other remedy than the one first resorted to by them. In other words, it is said they cannot "mend their hold." There are, in our opinion, two answers to this objection: First, the facts of this case do not warrant the application of that doctrine; and, second, the pleadings do not permit it.

As already pointed out in the statement of the case, the plaintiff, in its answer to the cross-complaint or counterclaim of the defendants, merely takes issue with the allegation of the cross-complaint that the plaintiff had failed to make the required and needful repairs. This issue of fact alone was joined, and no other defense was suggested by the pleadings. On this issue the case was tried below, and the trial court was not asked to pass on, and did not pass on, the question now suggested as decisive of the case; and, of course, no assignment of error is predicated on any adverse ruling on that question. Moreover, learned counsel for the plaintiff neither in the court below nor here have made any such contention. In view of these facts, the question suggested is not before us, and we refrain from discussing it.

The assignment of error that the counterclaim, as pleaded, states no cause of action, is, in our opinion, without merit. The defendants, by way of cross-complaint, set forth the covenant of the contract,

which required the purchaser to make any and all repairs proper and needful for the suitable maintenance of the buildings and improvements, alleged its violation, and specified the particulars thereof. This was quite sufficient. In fact, we do not see how it could be made better.

Several errors in admitting evidence over plaintiff's objections are assigned; but in most instances no exceptions were preserved to the rulings of the court. In such cases the formal assignment presents no question of law for consideration by the appellate court. Such assignments as are based on exceptions duly taken at the time have been examined and found untenable.

Some other questions were argued by counsel for plaintiff in error, all of which have received careful consideration; but they fail to disclose any prejudicial error of which it can complain.

The judgment of the Circuit Court is affirmed.

PHILIPS, District Judge (dissenting). After the best consideration I can give, I find myself unable to concur in so much of the foregoing opinion as affirms the action of the Circuit Court in rendering judgment for the defendants on the counterclaim. The sixth paragraph of the contract between the vendors and the vendee provided as follows:

"(6) The party of the second part [plaintiff in error] agrees that in case of any default of or failure to perform this agreement in whole or in part, either in the payment of installments recited or in any respect whatsoever, upon 10 days' written notice sent through the United States mail addressed to the party of the second part, at Pueblo, Colo., this agreement shall be void, and the party of the first part, its agents or representatives, may immediately thereafter resume possession of the premises herein described, retaining whatsoever sum may have been paid hereunder, and any and all improvements which may have been made on the said premises, and all right, title, and interest, in law and in equity, of the party of the second part, shall terminate, and the party of the second part shall ever be debarred from all rights, remedies, and actions, either in law or in equity, founded upon or existing under this agreement; such sum and such improvements so retained by the party of the first part being considered the rental of said premises for the time of occupation thereof by the party of the second part: all payments falling due subsequently to the peaceable delivery of the said premises to the party of the first part being canceled."

It will be observed that in case of any default or failure to perform the agreement in whole or in part, either in the payment of installments or in any other respect whatever, the option or right was given to the vendors, upon 10 days' written notice, to declare the agreement void and to enter into possession. This election the pleadings and the proofs show the vendors exercised. The petition alleges:

"That on or about October 1, 1905, the defendants served upon the plaintiff a written notice to give over and surrender possession of said premises, and declaring said contract repudiated and canceled, and alleging as a reason for said repudiation that plaintiff and the said the Colorado Carriage & Implement Company had failed to make the payments required by said contract."

This specific allegation was not denied in the answer. Both the pleadings as well as the evidence show that the notice to the plaintiff to quit and surrender possession was based entirely upon the ground that the vendee or its assignee had failed to make payment of install-

ments as required by the contract. Nowhere was the forfeiture declared placed upon any other ground; and no claim was ever asserted by the defendants respecting the contract being breached, by reason of the failure to keep the property in repair, until after this litigation arose between the parties. Having thus placed its right to declare the forfeiture upon said specific ground, and having retaken possession of the property under such declared forfeiture, the law declares that the defendants estopped themselves from afterwards asserting any other ground of default or dereliction on the part of the vendee or its assignee. In Railway Company v. McCarthy, 96 U. S. 267, 24 L. Ed. 693, the court laid down the following proposition:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

This court applied the same doctrine of the law in Kansas Union Life Insurance Co. v. Burman, 141 Fed. 835, 842, 73 C. C. A. 69, citing in support thereof a number of decisions to the effect that where the party, in taking action or asserting a right, bases it upon specific ground, he cannot, after litigation arises between the parties, assume another position. In the Burman Case, where the plaintiff sued for breach of contract with him as agent for the insurance company, in his letter of resignation or retirement from the agency he placed his action upon certain designated failures on the part of the insurance company in keeping the contract, and when litigation ensued undertook to rely upon other ground. This court said:

"This rule should have especial application to this case, for the palpable reason, that, had Burman assigned as a reason for resigning his agency the neglect to renew the license, he would have afforded the company an opportunity to remove the objection. By not assigning the delay or omission as a reason for his refusal to continue his agency, and making no claim in his letter of resignation that the insurance company was unwilling to go ahead with the salary contract, he in effect said such ground is not relied on."

So here the presumption of law is that, if the vendors had made the claim that the contract was not being kept on account of failure to make repairs of the building, the assignee might have saved its rights by making the required repairs and prevented forfeiture therefor. The very provision requiring 10 days' notice in the contract before such forfeiture was to secure to the vendee its locus pœnitentiæ.

More conclusively, yet, against the right to maintain the action set up in the counterclaim, are the express provisions of the contract that in the event of failure of the vendee to perform the agreement in whole or in part, either in the payment of installments recited or in any respect whatsoever, upon 10 days' written notice, "this agreement shall be void." It then proceeded to declare specifically what the results and liabilities of the vendee would be in such event: (1) The vendor could immediately resume possession of the premises; (2) retain whatever sums had been paid on the contract, and all improvements made on the premises; (3) all right, title, and interest, in law or in equity, of the vendee, should terminate, and the vendee should ever be debarred

from all rights, remedies, and actions, either in law or equity, founded upon or existing under the agreement; (4) that such sum and the improvements so retained by the vendor should be considered as equivalent of rental of the premises for the time the same were occupied by the vendee or his assignee; and (5) that all subsequent maturing payments should be cancelled. From which it is clear that the parties to the contract, in its very inception, stipulated among themselves, under seal, what the forfeitures, losses, and rights of the respective parties should be in the event of the declared forfeiture and retaking possession by the vendor. They thus consented to put a certain and definite limit to what the rights and losses should be. Neither party could add to or subtract therefrom. Parties have the right to make their own contracts, whether provident or improvident, and to affix the liabilities for a breach thereof. The vendors having made their election to retake the demised premises, with the advantages of the specified forfeitures, whereupon the agreement should become void, they were precluded from afterwards suing on the dead agreement to enforce other claimed liability under the contract.

In Seanor v. McLaughlin, 165 Pa. 150, 30 Atl. 717, 32 L. R. A. 467, the court, in discussing the question of the plaintiff's right to remedies either to treat the contract as in existence and predicate action for damages for breach thereof or to declare forfeiture as therein provided, said the party could not do both, "for the contract or obligation to which the bond was collateral no longer existed." So here the contract gave the vendor the option to declare it at an end for any breach thereof, and to enter and take possession, with an express enumeration of what the vendor in such instance could have or what the vendee should forfeit and lose. On the maxim "Facit cessare tacitum," no further right of action or liability could be predicated upon the agreement, which had become void by the declared act of the party. The vendee may have been in arrears in the payment of accrued taxes or premiums on the insurance, or he might have paid one-half the purchase money. But, as the contract provided specifically what the consequences of his derelictions might be in the event of the vendor declaring forfeiture and taking possession, he was in position to say: I will surrender the possession and submit to the specific consequences, as they are exclusive of any and all other liabilities.

"The established rights and remedies for the breach of an agreement are as effectually contracted for as the performance of the act stipulated." Cresswell Ranch & Cattle Co. v. Martindale, 63 Fed. 87, 11 C. C. A. 33.

So in Warren-Scharf Asphalt Paving Co. v. Laclede Construction Co., 111 Fed. 695, 696, 49 C. C. A. 552, Judge Thayer, speaking of a cognate question, said:

"The parties to the agreement had in mind both a temporary and a permanent suspension of the work, and, in language which cannot be misunderstood, stipulated that the defendant company might suspend operations under the contract, either temporarily or permanently (that is, abrogate the contract altogether), on 10 days' notice; and as if to make their purpose and intent more clear, and to put the matter beyond dispute, they further agreed that, if operations under the contract were suspended, the party of the first part should not have any claim for damages. In other words, the right was reserved by the defendant company to put an end to the agreement at any time on 10

days' notice, without liability for damages. It was entirely competent for the parties to enter into such an agreement."

In Baltimore R. R. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, the court said:

"The right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation, etc., unless it clearly appear that they contravene public right or the public welfare."

Some doubt is expressed in the majority opinion as to whether or not the questions above discussed are properly presented to this court for review. The reply of the plaintiff to the counterclaim is in effect a general denial. It specifically denies the allegations with respect to the alleged breach of the contract in not making repairs. It is now the well-recognized rule that matter of estoppel in such case need not be specifically pleaded, for the palpable reason that it is disclosed by the pleadings, the contract, and the evidence that the counterclaimant had made his election to demand and take possession because of express claimed breach and no other. The counterclaim being based upon the contract alleged in plaintiff's petition, and it appearing from the whole record and evidence that the damage claimed was for failure to make improvements, it was a matter of law as to whether or not the plaintiff was entitled to recover; and these questions were sufficiently raised by the exceptions taken to the charge of the court, to wit:

"Plaintiff excepts to the instruction of the court, instructing the jury that a personal judgment may be rendered against the plaintiff upon the covenant in the contract providing for the making of repairs."

Among the assignments of error are the following:

"The court erred in receiving and entering the verdict of the jury upon the issues made by the defendants' counterclaim and plaintiff's replication over plaintiff's objection and exception.

"The court erred in instructing the jury that they should return a verdict against plaintiff on the issues presented by defendants' counterclaim, and in not instructing them to return a verdict for the plaintiff thereon."

It was a matter of substantive law, arising upon all the evidence before the court, that the defendant could not recover on the counterclaim. If so, it was error to instruct the jury that there might be a recovery. Therefore the exception to the charge and the assignment of error is broad enough to entitle the plaintiff in error to have the question of law reviewed.

The judgment based on the counterclaim, in my opinion, should be reversed.