In re NORTON.

(District Court, E. D. Pennsylvania. October 5, 1910.)

No. 3,679.

BANKRUPTCY (§ 318*)—PROVABLE CLAIMS—CONDITIONAL SALE OF PROPERTY—ELECTION OF REMEDIES.

Under the law of Pennsylvania, a contract, called a lease, under which a machine was delivered to the lessee, who gave his notes for installments of so-called rent, with the privilege, on full payment, of buying the machine for a nominal sum, and which provided that until such purchase it should remain the property of the lessor, who on default might retake possession, was in effect a contract of conditional sale, and on default of the purchaser the seller could, at his election, affirm the sale and enforce the notes or retake the property, but could not do both; and where, on the bankruptcy of the purchaser, the seller retook possession of the machine, he cannot prove the notes as a claim against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. § 318.*]

·In the matter of James E. Norton, bankrupt. On review of order of referee disallowing claim. Affirmed.

J. Bennett Nolan, for trustee.
Wellington M. Bertolet, for bankrupt and creditors.
Ellwood H. Deysher, for claimant.

J. B. McPHERSON, District Judge. The facts of this controversy are as follows:

In February, 1908, the Harris Automatic Press Company entered into the following agreement with the bankrupt:

"That the said party of the first part has agreed to let to hire and does hereby let to hire to the said party of the second part for the term of twenty (20) months, commencing with the date of these presents, the following described property, to wit:

"One 18 two-color Harris Press, etc., for the rental of the sum of thirty-five hundred dollars ($3,500), which said rental shall be paid by said party of the second part to said party of the first part as follows:

"Five hundred dollars ($500) upon the execution of this lease, and the further rental of one hundred and fifty dollars ($150) per month, payable on the seventh day of each and every month for the period of the succeeding twenty (20) months, said rental bearing interest at the rate of six per cent. (6%) per annum.

"The said James E. Norton understands and agrees that he does not acquire any property rights in said press whatsoever, but merely accepts the same as bailee, and that he will not allow said property to be removed from the premises now occupied by him, No. 30 North 6th St., in said city of Reading; that he will not underlet nor assign this lease, nor allow the said property out of his possession without the written consent of the said Harris Automatic Press Company, and should he do so, or make any default in the payments of the rental in the time herein specified and as the same shall fall due, the said Harris Automatic Press Company or any person authorized by it is then privileged to enter any premises where it has reason to believe the said property is located and to remove the same without any force, hindrance, or molestation by, through, or from the said James E. Norton in any manner whatsoever, he, the said James E. Norton, waiving all actions for assault, trespass, or other suits in law or equity, and thereupon to enjoy the said property as though this agreement of hire had never been made or entered into.

"And the said James E. Norton certifies that the said press is in good condition and is good and serviceable and in all respects as represented by the said Harris Automatic Press Company, and agrees that he, the said James E. Norton, will at his own expense keep said property insured against loss or damage by fire in a company or companies and for amounts satisfactory to the said Harris Automatic Press Company, and mark the loss, if any, payable to and deposit the policies of said insurance with said Harris Automatic Press Company, and upon the termination of this lease, by forfeiture or otherwise, will deliver the said property to the said Harris Automatic Press Company in as good condition as it now is, ordinary wear excepted.

"And the said James E. Norton further agrees to give to the said Harris Automatic Press Company as evidence of the indebtedness for said rental, twenty (20) notes, each in the sum of one hundred and fifty dollars ($150), bearing even date herewith and payable one in each succeeding month hereafter for the term of this lease; said notes bearing interest at the rate of six per cent. per annum.

"The said Harris Automatic Press Company agrees that if the said James E. Norton, his heirs, administrators, or assigns, shall well and truly keep the covenants herein made and shall make no default in the payment of any of the said installments of hire or rent as the same shall fall due, and this agreement shall not be sooner determined by mutual consent or otherwise, it

will execute and deliver to the said James E. Norton, his heirs, administrators, or assigns, in consideration of the further sum of ten dollars ($10), a bill of sale for said property, and the said Harris Automatic Press Company also agrees that for a period of one year from the date of the execution of this lease it will repair all breakage due to imperfections of workmanship or material, provided all broken parts which are required to be replaced are returned to them, carriage charges prepaid.

"It is distinctly understood that any indulgence to the said James E. Norton in meeting said installments of rent as they fall due shall not operate as a forfeiture or abatement to any extent to collect the rent due, and, if not paid when demanded, to enter and take possession of said property as herein stipulated."

The bankrupt paid the $500 and gave the notes. The lease—for present purposes I shall call it a lease—expired on October 8, 1909, and at that time seven of the notes had been paid. On December 27th, $50 more was paid on account of the eighth note, thus making a total payment of $1,600. Norton was adjudged bankrupt on February 11, 1910, and on that day, therefore, he owed the claimant $1,900, with interest. For this sum a proof of debt was filed on February 15th, in which the consideration is stated as follows:

"Rental of printing press leased by said claimant to said bankrupt at said bankrupt's special instance and request; and that said debt is evidenced by a certain copy of lease and notes hereto attached," etc.

Not content, however, with making this demand in distinct affirmation of the lease, the claimant on April 1st took possession of the press, and has thus regained its property, and has also received $1,600 of what may be formally called rent, but in substance is the purchase price. Upon objection to the claim the referee (Samuel E. Bertolet) disallowed it, and the correctness of his action is now presented for review.

In the light of several comparatively recent decisions by the Supreme Court of Pennsylvania, the question is scarcely open for discussion. Campbell v. Hickok, 140 Pa. 290, 21 Atl. 362, presented almost an identical situation, and the court held that suit could not be maintained on the unpaid notes after the lessor had retaken the property. The following paragraph from the opinion states the reason for this conclusion:

"The rights of the parties were fixed by the agreement, which was the law to them. The company had these two remedies for the enforcement of their rights: One, in affirmance of the contract by suit upon the notes as they matured; the other, in rescission of it by repossessing themselves of the property, in which case the company were to have and enjoy the said personal property as though the contract 'had never been made.' The notes were not given in satisfaction of the agreement, or of the hire of the property. This seems to be conceded by both parties. The agreement and the notes were part and parcel of one transaction. If the agreement 'had never been made,' the notes would not have been given; and when the agreement is rescinded, with like effect as if it 'had never been made,' the notes fall with it for want of consideration."

To the same effect is Scott v. Hough, 151 Pa. 630, 25 Atl. 123, and Seanor v. McLaughlin, 165 Pa. 150, 30 Atl. 717, 32 L. R. A. 467.

The claimant admits the fatal effect of these decisions unless they can be distinguished, and a distinction is attempted upon the ground

that the present agreement contains the following provision which does not appear in the other cases:

"It is distinctly understood that any indulgence to the said James E. Norton in meeting said installments of rent as they fall due shall not operate as a forfeiture or abatement to any extent to collect the rent due, and, if not paid when demanded, to enter and take possession of said property as herein stipulated."

But I am unable to see how the claimant can draw from a proper construction of this language the double right to collect the unpaid notes and in addition to retake possession of the property. As I interpret the provision, it simply means that, if the lessor shall extend the time for paying any installment of rent, such indulgence shall not in any respect interfere with the remedies under other provisions of the contract. These remedies are specified, namely:

"To collect the rent when due, and, if not paid when demanded, to enter and take possession of said property as herein stipulated."

But nothing in the clause, as I understand it, confers upon the lessor the right to exercise both remedies. On the contrary, collection in money is first spoken of, and then, but in default of payment, the retaking of possession. It is declared that both remedies shall continue to exist in spite of the lessor's leniency in exacting payment; and the result merely is that the lessor may still select whichever remedy is preferred. In my opinion, the natural meaning of the words goes no further. Only the clearest language could avail to clothe a lessor under such an agreement with the right to retake the property after having received a large part of the so-called rent, and also with the right to collect in cash the remainder of the debt.

The order of the referee is affirmed.