MAYNARD v. REYNOLDS et al.

(Circuit Court of Appeals, Eighth Circuit. May 17, 1918. Rehearing Denied September 2, 1918.)

No. 5007.

1. APPEAL AND ERROR ⊜⟶173(6)—REVIEW—DEFENSES NOT PRESENTED IN COURT BELOW.
    Defense that contract upon which suit is based was invalid, because made after creation of relation of attorney and client, there being no evidence that contract was just and equitable, cannot be presented for the first time on appeal, since it involves the trial of two issues of fact.

2. ATTORNEY AND CLIENT ⊜⟶134(1)—CONTRACT—CONSTRUCTION.
    Contract for attorney's fees held fully performed by plaintiffs, when defendant client peremptorily ordered dismissal of suit for his own purpose on the eve of its hearing.

3. ATTORNEY AND CLIENT ⊜⟶166(1)—SUIT FOR FEES—EVIDENCE.
    In suit to recover attorney's fees under an express contract, evidence held to warrant jury finding that defendant client peremptorily ordered dismissal of suit for his own purpose on the eve of its hearing.

4. ATTORNEY AND CLIENT ⊜⟶167(2)—ACTIONS FOR FEES—DISOBEDIENCE OF INSTRUCTION—EVIDENCE.
    · In suit to recover attorney fees under express contract, whether plaintiffs disobeyed instructions of defendant client held properly submitted to jury; there being ample evidence to sustain finding that plaintiffs did not.

    Carland, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Action by Matt G. Reynolds and another, doing business as Reynolds & Harlan, against Samuel R. Maynard. Judgment for plaintiffs, and defendant brings error. Affirmed. ·

. H. M. Langworthy, of Kansas City, Mo. (O. H. Dean and W. D. McLeod, both of Kansas City, Mo., on the brief), for plaintiff in error.

· Thomas T. Fauntleroy of St. Louis, Mo. (Chase Morsey, Patrick H. Cullen, and Charles M. Hay, all of St. Louis, Mo., on the brief), for defendants in error.·

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The single error assigned in this case is that at the close of the trial by the jury the court below refused to instruct it to return a verdict for the defendant, Maynard. This was the case. Reynolds & Harlan, attorneys at law, sued Maynard on an express contract to pay them $4,000 for their legal services, and he defended. The parties went to trial on these pleadings. The plaintiffs allege that the defendant, who was the owner of about 1,100 shares of stock in the Doe Run Lead Company, a corporation, employed them to bring a suit against the St. Joseph Lead Company, a corporation, and the owner of the majority of the stock of the Doe Run Company, to prevent the St. Joseph Company from voting its

stock at a coming meeting of the stockholders of the Doe Run Company, which was held on May 16, 1916, and agreed to pay him therefor $1,000 in cash and $4,000 when the suit was finally disposed of in the local court, that he paid the $1,000, that they brought the suit, obtained from the court an order on the St. Joseph Company to show cause why it should not be enjoined from voting its stock, returnable on May 15, 1916, that on May 15, 1916, the defendant peremptorily directed the plaintiffs to dismiss the suit, and they did so, but that the defendant has not paid them the $4,000. The defendant answered that he owned 1,099 shares of the stock of the Doe Run Company, that he paid the plaintiffs $1,000 for services to be rendered by them in a suit that was then pending in the court below, but that the plaintiffs never rendered any services to him in that cause, that the suit referred to in plaintiffs' complaint was instituted by them without his knowledge or authority, that he never agreed to employ or pay the plaintiffs on account of any services in the latter suit, and that the plaintiffs refused to follow his explicit directions as to the conduct of his suit, and dismissed the suit referred to in their complaint.

The plaintiffs' witnesses testified to the truth of the averments in their complaint. The defendant testified that he agreed to pay the plaintiffs $1,000 cash and $4,000 later for services in the pending suit described in his answer, that he never agreed to pay them anything on account of the new suit which they commenced, that he directed them to withdraw from that suit the averments regarding and the prayer for a receivership of the property of the Doe Run Company, and that they refused to do so and dismissed the suit.

At the close of the trial the court refused to direct the jury to return a verdict for the defendant. It then charged the jury, first, that both parties agreed upon the amount to be awarded if there was to be any award; second, that if the jury believed from a preponderance of the evidence that the defendant employed the plaintiffs to protect his interests in the matter of the Doe Run Company, and in doing so they prepared the complaint in the suit they brought and prepared for trial under their contract, and then the defendant for any reason of his own ordered them to dismiss the case, then the plaintiffs had done all they could do under the law, and the verdict of the jury should be for the plaintiffs for the sum of $4,000 and interest; but, third, that if they believed from the evidence that the plaintiffs did not, in so far as they could, follow out the directions of the defendant, and if they believed, as contended by the defendant, that the plaintiffs accepted employment to work out the rights of the plaintiff in the case that was then pending, and the plaintiffs undertook to do that, then that was not an employment in a new suit, and that if they believed, as testified to by the defendant, that because he wanted a change in the prayer of the complaint the plaintiffs went into the court, and against his will and consent dismissed the suit they had brought for him, then they could not recover.

[1] One of the assignments of error upon which counsel rely to support their contention that the court below should have instructed

the jury to return a verdict for the defendant is that the contract to pay $1,000 cash and $4,000 later for the plaintiffs' services was invalid, because it was made after the relation of attorney and client between the plaintiffs and defendant had been created, and there was no evidence that the contract was just and fair. But this defense to the contract was not pleaded in the answer, was not suggested at the trial, was not submitted to the jury or the court below and the defendant tried the case throughout on the theory that, if the contract alleged by the plaintiffs was made and performed, they were entitled to recover. It is too late to present this defense for the first time in this court, and it must now be disregarded, first, because it was essential to its presentation that it should be pleaded in the trial court, so that the plaintiffs would have notice of it and an opportunity to produce at the trial evidence that the relation of attorney and client did not exist at the time the contract was made, and that the contract was just and equitable (Finley v. Quirk, 9 Minn. 194 [Gil. 179], 86 Am. Dec. 93; Northrup v. Mississippi Valley Ins. Co., 47 Mo. 435, 443, 444, 4 Am. Rep. 337; Musser v. Adler, 86 Mo. 445, 449; Bliss on Code Pleading [3d Ed.] § 352); second, in an action at law a federal appellate court is a court for the correction of the errors of the court below exclusively. The defense now presented for the first time involves the trial of two issues of fact, whether or not the relation of attorney and client existed at the time the contract was made, and whether or not the contract was fair and just. These issues were never presented to or tried by the jury or the court below, and this court has no jurisdiction under the Constitution of the United States to try them in the first instance. Again, the question of law whether the contract was valid or invalid, in view of the fiduciary relation of the parties at the making of the contract first alleged in this court, was never presented or suggested to the court below, and it never ruled upon it, therefore there is no error of that court in this regard for this court to review. Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 114 Fed. 133, 140, 52 C. C. A. 95, 102; Virtue v. Creamery Package Co., 227 U. S. 8, 38, 33 Sup. Ct. 202, 57 L. Ed. 393; Barnes & Tucker Coal Co. v. Vozar, 227 Fed. 25, 28, 141 C. C. A. 579, 582; Oregon R. & Navigation Co. v. Dumas, 181 Fed. 781, 785, 786, 104 C. C. A. 641; Mesa Market Co. v. Crosby, 174 Fed. 96, 102, 98 C. C. A. 70, 76. "A party may not sit silent and take his chances of a verdict, and afterwards, if it is adverse, complain of a matter which would have been immediately corrected at the time of the trial." McCollom v. Pennsylvania Coal Co., 250 Pa. 27, 32, 95 Atl. 380, 382.

[2] Another contention of counsel for the defendant, Maynard, is that the contract is not susceptible of the construction that the plaintiffs had performed it when the defendant ordered the suit dismissed, and that the action should have been for damages for the prevention of its performance. The contract must be read and its construction must be given in the light of the circumstances surrounding the parties when it was made, and the issue whether or not the plaintiffs performed it must be considered in the light of that construction, and, unless there

was no substantial evidence to sustain that finding, of the verdict of the jury that they had performed it, for that question was submitted to them. The contract was made on April 22, 1916; the object of the suit which the plaintiffs were to bring was to prevent the St. Joseph Company from voting its stock in the Doe Run Company on March 16, 1916; the contract was that the defendant should pay the $4,000 when this matter was disposed of in the local court; the plaintiffs brought the suit, obtained the order on the St. Joseph Company to show cause why it should not be enjoined from voting the stock returnable on May 15, 1916, and prepared to try that issue on that day. Mr. Morsey, an attorney in the plaintiffs' offices, who was employed by and associated with them in the suit they brought for Maynard, testified that on the morning of May 15, 1916, Mr. Maynard came in to the offices of the plaintiffs and said to him, "I have instructed Judge Reynolds to dismiss this suit;" that he asked Mr. Maynard why he was going to dismiss it, and explained to him that it would leave the plaintiffs in an embarrassing position; that they had the case ready to present that morning, and finally Mr. Maynard said, "Well, I have gotten into difficulties with my Boston brokers;" that Mr. Reynolds then came in, and he and Mr. Maynard went into Mr. Reynolds' office. Mr. Reynolds testified that on that morning, when he came into his offices, Mr. Maynard was there and said he wanted that case dismissed, and he replied, "Why, in the name of common sense, what's the matter with you this morning." Maynard said, "No, no; I want it dismissed." He answered, "Well, now you think about it a minute;" told him he was going to the barber shop, and to think about it meanwhile; that when he came back he tried to persuade him to let him go on with the suit that day; told him they were ready to take the opinion of the court upon it then, that if they lost they would not lose anything, that if they won it would be of great advantage to him; said to him, "For heaven's sake, don't make me dismiss this bill, let me take the opinion of the court; it will meet in a few moments, and by noon we will have the whole matter thrashed out," and asked him what in the world he meant; that Mr. Maynard said, "Judge, I am firm about it; I want that case dismissed, and I can't and won't change my mind;" that he then said, "Look here, sir, you can force me to dismiss that case, but you can't do it and not pay me off. My fee—the balance of that fee is $4,000;" that Mr. Maynard replied, "Oh, I will pay your fee; your fee, don't worry about that;" that he then said, "Then you demand that I dismiss it?" and Mr. Maynard said, "I do," and he went over to the court and dismissed the suit. Mr. Maynard testified that he made a contract with the plaintiffs to pay them $1,000 cash and $4,000 when the litigation in the old pending suit should be carried through the courts for their services in that old suit, but that he made no contract to employ or pay them for services in the new suit; that he signed the complaint in the latter suit; that he afterwards demanded that the plaintiffs take out of the complaint in that suit their prayer for a receiver for the Doe Run Company, but that the plaintiffs did not do so; and that he never ordered or requested Mr. Reynolds to dismiss that suit.

[3] The evidence which has been recited furnished ample support

to the finding of the jury that the suit was dismissed on the peremptory order of Mr. Maynard on the eve of its hearing for his own purposes, and in view of the fact that its object was to prevent the voting of the stock on the next day, of the impracticability after the dismissal of that suit to accomplish its object by any other litigation, of the peremptory nature of the order of dismissal, and of the renewed positive promise made on the eve of the dismissal to pay the $4,000, there was no error in the ruling of the court that the true construction of the contract and the transaction was that it would be and was fully performed by the plaintiffs when the jury found that such a dismissal was peremptorily ordered by Mr. Maynard. He had the power to finally dispose of the suit, the matter and the litigation in the plaintiffs' hands, by ordering the dismissal of that suit; he did so when he caused its dismissal at the time and under the circumstances that have been detailed, and the plaintiffs had then fully performed their contract.

[4] Finally, counsel argue that the court should have instructed the jury to return a verdict for the defendant, because the plaintiffs violated the instructions of Mr. Maynard not to apply for a receiver and to withdraw from the prayer of the complaint in the suit they brought the prayer for a receiver of the property of the Doe Run Company. On this subject Mr. Maynard testified that before and after the suit was brought he told Mr. Reynolds he did not want an application made for a receiver of the property of the Doe Run Company, and that after the suit was brought he repeatedly demanded, and once on May 15, 1916, that Mr. Reynolds withdraw from the complaint the prayer for such a receiver. Mr. Reynolds testified that he remembered only one or two occasions on which the receivership was mentioned to him by Mr. Maynard; that these were when the suit was brought on May 10, 1916, or a day or two thereafter; that nothing was said about it on May 15th, when the suit was dismissed; that when Mr. Maynard objected to the prayer in the complaint for the receivership and to an application for one, he explained to him that if he did not want a receiver he did not have to take it; that the prayer for it was put into the complaint out of an abundance of caution, so that he would be able to get a receiver on notice in that suit if he should be entitled to it; and that he need not worry about the receivership, for he would not get it. He further testified that he got no idea from Mr. Maynard's statement to him regarding the receivership that it was an absolute demand that he take out of the complaint the prayer for a receiver, or he would have cut it out; that it was just as easy to cut it out as not, rather than have any controversy with Mr. Maynard. Mr. Morsey testified that the complaint was filed on May 10th; that the question of the receivership had never been discussed between him and Mr. Maynard until about two days thereafter; that Mr. Maynard then called his attention to the fact that there was a portion of the prayer of the complaint devoted to the application for the appointment of a receiver, and he explained to Mr. Maynard that that made no difference, that they were not going to press that, that the only thing they were going to press was the question of the injunction against the St. Joseph Company; and Mr. Maynard agreed with him and said, "Well, that won't hurt the bill; as long

as that is in there, you need not take it out." The question whether or not the plaintiffs disobeyed instructions of the defendant, Maynard, was submitted to the jury upon this evidence, they found that they did not, there was here ample evidence to sustain that finding, and it was not the duty of the court to withhold that issue from them.

The judgment below must be affirmed. It is so ordered.

CARLAND, Circuit Judge (dissenting). I dissent from the opinion of the majority for the following reasons: The suit was to recover attorney fees upon an express contract. We are not concerned with what the jury found, but as to whether the defendant below was entitled to a directed verdict in his favor. The services which were agreed to be performed by the plaintiffs were not performed. It is true their nonperformance was not the fault of plaintiffs, but they agreed to perform the same, subject to the right of the defendant to discontinue the litigation at any time. This right was not subject to any condition that plaintiffs might impose; therefore the remark of defendant that the fee would be paid was unsupported by any consideration and futile to support a verdict for plaintiffs. The result reached by the majority would make the employment of counsel a hazardous proceeding indeed.